997 P.2d 960 (2000)
100 Wash.App. 483
TO-RO TRADE SHOWS, d/b/a O'Loughlin Trade Shows, Appellant,
v.
Grant COLLINS and Kathy Barrosfriedt, in her official capacity as the Director of the Department of Licensing, The State of Washington, and Robert Smith, and John Does 1 Through 5, Respondents.
No. 23126-3-II.
Court of Appeals of Washington, Division 2.
April 21, 2000.
*961 Rene David Tomisser, Atty. Gen. Office/tort Claims, Olympia, for Respondents.
Richard H. Wooster, Mann, Johnson, Wooster & McLaughlin Ps., Tacoma, for Appellant.
ARMSTRONG, A.C.J.
Lake City RV sells recreational vehicles through its Idaho dealership located thirteen miles from the Washington State border. Lake City displayed vehicles at an RV trade show in Spokane sponsored by To-Ro Trade Shows d b a O'Loughlin Trade Shows. But Lake City is not a Washington dealer licensed to operate its business in Washington as required by statute. At the trade show, an agent of the Department of Licensing ("DOL") instructed Lake City to close and lock its displayed RV units. Lake City did so. As a result, a number of show patrons demanded refunds.
To-Ro, the trade show promoter, sued (1) for a declaration that the statute as enforced by DOL is unconstitutional, (2) for damages under 42 U.S.C. § 1983, and (3) for damages resulting from tortious interference with its business expectancy. To-Ro alleged that DOL's action and the statutory licensing requirements violate its and the out-of-state dealer's First Amendment and equal protection rights. To-Ro also alleged that the statute discriminates against out-of-state dealers under the Commerce Clause. The trial court dismissed To-Ro's claims. Holding that To-Ro lacks standing to challenge the constitutionality of the licensing scheme, we affirm.

FACTS
To-Ro produces and promotes trade shows throughout the Northwest, including a spring RV show in Spokane. The Spokane show draws patrons from Washington, Idaho, Montana, and Canada. To-Ro invited Lake City RV to participate in the 1994 show. Lake City is a licensed dealer in Idaho, located thirteen miles from the Washington State border. DOL told both Lake City and To-Ro that Lake City could not participate in the show without a Washington license. But Lake City did not have time to obtain a license before the show.
After the show opened, Collins, a DOL investigator, found out that Lake City was participating in the show. Lake City representatives said they were under the impression that vehicles could be displayed as long as they were not for sale. "For display only" and "not for sale" signs were posted on the vehicles. It was disputed whether prices were actually displayed on the vehicles, whether sales were solicited, and when the "for display only" signs were posted. Collins told Lake City to close and lock their units until he received further direction from his superiors. Lake City complied.
When Lake City's display was closed, people immediately demanded a refund. To-Ro refunded the ticket price to at least one hundred people and admitted new customers for free. Robert O'Loughlin from To-Ro also testified that Lake City committed to purchase space at its 1995 Spokane RV show but cancelled at the last minute. According to O'Loughlin, Lake City RV could not get a waiver of the statutory requirement for an in-state location and did not have the money to open a second location in Washington. See RCW 46.70.023; 46.70.025.
To-Ro sued, alleging three causes of action: (1) a declaratory judgment action challenging the constitutionality of the licensing statutes; (2) an action for damages under 42 U.S.C. § 1983, alleging due process and First Amendment violations arising from DOL's enforcement of the statute at the Spokane trade show; and (3) an action in tort for interference with To-Ro's business expectancy.
In its declaratory judgment action, To-Ro challenged the constitutionality of the licensing scheme under the First Amendment,[1] the Equal Protection Clause,[2] and the Commerce Clause.[3] Under the First Amendment, To-Ro challenges RCW 46.70.021, which provides in part:

*962 It is unlawful for any person, firm, or association to act as a vehicle dealer or vehicle manufacturer, to engage in business as such, serve in the capacity of such, advertise himself, herself, or themselves as such, solicit sales as such, or distribute or transfer vehicles for resale in this state, without first obtaining and holding a current license as provided in this chapter,...
To-Ro argues that the statute, to the extent it prohibits advertising, violates free speech principles. According to To-Ro, if an out-of-state dealer does not engage in sales activity, the First Amendment guarantees the dealer the right to participate in trade shows by advertising, displaying, and promoting products without obtaining a Washington license.
To-Ro's equal protection argument is based on DOL's interpretation of the statute that allows unlicensed, out-of-state dealers to advertise in Washington newspapers or on television but prohibits them from displaying vehicles at a trade show. A DOL representative said that an Idaho dealer can advertise in a newspaper or on television if "they're saying come to Idaho and buy these vehicles." But out-of-state dealers are prohibited from displaying vehicles in Washington.
Under the Commerce Clause, To-Ro challenges the constitutionality of RCW 46.70.023, which requires that "[t]he business of a vehicle dealer ... be ... carried on at an established place of business." Established place of business means "a permanent, enclosed commercial building located within the state of Washington easily accessible at all reasonable times." RCW 46.70.023.
Both parties moved for summary judgment. The trial court dismissed To-Ro's Commerce Clause and First Amendment claims for lack of standing. But the court entered an order on summary judgment, ruling that RCW 46.70.021 does not prohibit the display or pricing of RV's at trade shows by unlicensed dealers and that product representatives could accompany such vehicles.
The case went to trial on To-Ro's tortious interference and Section 1983 claims. To-Ro argued that it was deprived of due process and its First Amendment right to free speech and was, therefore, entitled to damages under Section 1983. At trial, the parties disagreed as to the meaning of the summary judgment orders and the issues to be decided at trial. To-Ro interpreted the second order as a declaration that product display by unlicensed dealers was permitted in the State of Washington. DOL said the order was offered as an interpretation to assist the parties at an upcoming show. The court prohibited the parties from mentioning the order in their opening statements. To-Ro was not allowed to argue its First Amendment or due process claims to the jury but was permitted to present the facts of its tortious interference claim.
Following trial, the court dismissed all causes of action. The court ruled that Lake City did not have a protected property interest that would give rise to a procedural due process claim and, even if Lake City did, To-Ro lacked standing to bring the claim. The court also dismissed the Section 1983 claim, ruling that the State had qualified immunity. And in contradiction to its previous order, the court ruled that prohibiting the display of vehicles by unlicensed dealers was not a violation of the First Amendment. Although this ruling precluded the issue of tortious interference from going to the jury, the court, with the parties' consent, submitted three questions to the jury on an advisory basis.[4] The jury answered "no" to each of the following questions:
1. Did the Plaintiff prove that no prices were displayed for specific Lake City RV vehicles at the show at any time the show was open to the public?
2. Did the Plaintiff prove that Lake City RV vehicles at the show were marked with "For display only" signs at all times the show was open to the public?
*963 3. Did the Plaintiff prove that Defendants' closure of the Lake City RV display proximately caused the Plaintiff damages?

ANALYSIS

Does To-Ro have standing under the Declaratory Judgments Act?
The State argues that To-Ro does not have standing to raise constitutional challenges to the licensing requirements for motor vehicle dealers. To-Ro responds that it may act in a representative capacity on behalf of out-of-state dealers who want to display their products in Washington and on behalf of out-of-state residents interested in viewing products from their home state at a Washington trade show. In addition, To-Ro argues that the licensing requirements prevent it from presenting a broad array of products at its trade show.
Citing Hunt v. Washington State Apple Adver. Comm'n., 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), To-Ro notes that representative suits have been recognized in Commerce Clause cases. But Hunt is distinguishable. There, the Washington State Apple Advertising Commission was a state agency whose purpose was to promote the interests of apple growers. Hunt, 432 U.S. at 336-37, 97 S.Ct. 2434. To-Ro is not a member of an association that represents out-of-state dealers and is not charged with the responsibility of promoting the interests of RV dealers.
Hunt is also distinguishable because the suit was brought in federal court. The standing requirement in federal courts is based primarily on the "case or controversy" requirement of Article III, Section 2 of the United States Constitution. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Philip A. Talmadge, Understanding the Limits of Power: Judicial Restraint in General Jurisdiction Court Systems, 22 SEATTLE U.L. REV. 695, 705-07 (1999). In addition to the constitutional constraint of subject matter jurisdiction on federal court jurisdiction, the federal courts have imposed prudential constraints flowing from the case and controversy requirement. Warth, 422 U.S. at 499-501, 95 S.Ct. 2197; Talmadge, supra at 706. Thus, the "federal courts will generally not hear cases that are moot, lack ripeness, require advisory opinions, or in which the plaintiff lacks standing." Talmadge, supra at 706-07 (footnotes omitted). In contrast, the Washington State superior courts are courts of general jurisdiction and are not constrained by subject matter jurisdiction under Article III, Section 2. See Talmadge, supra at 708-11. Thus, we first review the standing issue under Washington's Declaratory Judgments Act, RCW Ch. 7.24, and the cases interpreting it.
Under the Declaratory Judgments Act, "[a] person ... whose rights, status or other legal relations are affected by a statute... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. Because Washington courts are prohibited from rendering advisory opinions, the party seeking a declaratory judgment must present a justiciable controversy. See Walker v. Munro, 124 Wash.2d 402, 411, 414, 879 P.2d 920 (1994). A justiciable controversy means:
(1) ... an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.
Walker, 124 Wash.2d at 411, 879 P.2d 920 (quoting Nollette v. Christianson, 115 Wash.2d 594, 599, 800 P.2d 359 (1990)).
Under this standard, To-Ro's interests must be "direct and substantial," and it may not challenge the licensing statute based on the potential or theoretical interests of out-of-state residents or unlicensed dealers. To-Ro also argues that DOL's interpretation and enforcement of the licensing statute directly affects its ability to present a broad array of products and, thereby, draw more customers to its show. And To-Ro claims an economic impact: When Lake City withdrew from the *964 show, To-Ro had to refund money, admit customers for free, and reduce ticket prices. In addition, To-Ro claims that Lake City could not attend its 1995 show because the cost to set up an in-state location was prohibitive.
But relying on Washington Beauty College, Inc. v. Huse, 195 Wash. 160, 80 P.2d 403 (1938), the State argues that To-Ro is not directly affected by the dealer licensing statute. The State argues that only a person who is subject to the licensing requirement has standing to sue. In Washington Beauty College, the owner of a beauty school challenged a statute requiring that hairdressers have a high school education. The school claimed that this requirement interfered with its ability to contract with students and prospective students. Washington Beauty College, 195 Wash. at 162, 80 P.2d 403. The State Supreme Court held that the school's interest was "too remote" to bring a declaratory judgment action. Washington Beauty College, 195 Wash. at 165, 80 P.2d 403. The court concluded:
[The statute is] directed essentially to students, who desire to qualify so as to secure a license to act as a hairdresser and to engage in the practice of beauty culture, rather than to beauty schools or colleges as such. No showing has been made of any direct or substantial injury threatened or suffered by appellant so as to present a justiciable issue. In our opinion, its interest is too remote to entitle it to invoke the declaratory judgment act.
Washington Beauty College, 195 Wash. at 165, 80 P.2d 403.
Here, To-Ro argues both an economic interest, as in Washington Beauty College, and its inability to present a broad array of products. As to the latter, To-Ro points out that Lake City is the only dealer in the show area who handles certain products. But To-Ro has not shown that other Washington dealers or the manufacturers could not present the products. Indeed, several manufacturers' representatives were present during a meeting at the show between To-Ro, Lake City, and the State. Moreover, To-Ro has not shown that Lake City was necessarily excluded from displaying its products at the show. Lake City applied for a license but withdrew the application because it did not have time to complete the process. And Lake City could have applied for a waiver of the in-state location requirement.[5] Therefore, we conclude that To-Ro failed to show that any products were necessarily excluded from display at the show because of Lake City's aborted attempt to participate. As to To-Ro's second argument, Washington Beauty College suggests that economic impact is not enough to confer standing. But in other contexts, the Supreme Court has said that "[p]arties whose financial interests will be affected by the outcome of a declaratory judgment action have standing." Yakima County Fire Protection Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 379, 858 P.2d 245 (1993); see also Seattle School Dist. No. 1 v. State, 90 Wash.2d 476, 493, 585 P.2d 71 (1978).
In Yakima County, homeowners and the local fire district challenged the validity of agreements by which homeowners, as a condition of getting sewer service, agreed to support a future annexation. Yakima County, 122 Wash.2d at 375-76, 858 P.2d 245. The court held that the fire district did not have standing to challenge the procedure because it would be financially impacted only if the annexation was successful; enforcement of the agreements would not ensure annexation, only make it easier. Yakima County, 122 Wash.2d at 380, 858 P.2d 245.
In Seattle School Dist., the King County School District and others sued the State to compel State funding for basic education. The State argued that the District lacked standing. In rejecting the argument, the court found:
The interests of the District are not theoretical; they involve actual financial constraints imposed upon the District by the challenged system itself. In short, the *965 interests sought to be protected by the District are within the zone of interest either regulated by the challenged regulations and legislation or by Const. art. 9, §§ 1 and 2. Under these circumstances it would be unreasonable to deny standing to the District which, far from being a nominal party, stands at the very vortex of the entire financing system.
Seattle School Dist., 90 Wash.2d at 493-94, 585 P.2d 71.
Seattle School Dist. and Yakima County demonstrate that, where standing is claimed because of economic impact, the impact must be both direct and certain. In Seattle School Dist., the District was forced to operate within the financial constraints imposed by the State's failure to fully fund basic education. In Yakima County, the Fire District could show only that it would be affected by a possible future event, i.e., annexation. Here, To-Ro does not demonstrate a direct and certain financial impact by DOL's enforcement of the statute. While it is true that the State closed Lake City's exhibit, it is still possible, as we have discussed, that Lake City could have been licensed. And, we do not know to what extent Lake City pursued its application in 1995 or whether it even applied for a waiver of the in-state location business requirement in 1995. Further, To-Ro has not shown that Lake City's 1995 cancellation necessarily caused it financial harm. Certainly both businesses knew of the licensing procedures well in advance of that show. Thus, To-Ro had ample opportunity to plan for other dealers or manufacturers to display the products that Lake City carried. And, To-Ro does not demonstrate that it needed Lake City or any out-of-state dealer for the 1995 show to be successful financially. We conclude that To-Ro's claim of financial impact is not sufficiently direct and certain to give it standing to constitutionally challenge the out-of-state licensing requirement imposed upon Lake City.
Our conclusion is also supported by the United States Supreme Court's latest decision involving a First Amendment facial challenge to a California statute. Los Angeles Police Dep't. v. United Reporting Publ'g Corp., ___ U.S. ___, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999). There, California amended a statute to allow a person access to an arrestee's address only if the person declared that the information would be used for one of five prescribed purposes and would not be used to sell a product or service. A business that commercially supplied such information to customers sued for a declaration that the statute violated the First Amendment. In denying the challenge, the Court emphasized that facial challenges are rarely allowed and that, because of the personal nature of constitutional rights, one may generally not attack the statute on the basis that it "`may conceivably be applied unconstitutionally to others ... not before the Court.'" United Reporting, 120 S.Ct. at 488 (quoting New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). Thus, the business could not rely on the statute's effect on its customers, particularly where the customers could challenge the statute themselves "without incurring any burden other than the prospect that their request will be denied." United Reporting, 120 S.Ct. at 489. To-Ro faces the same predicament. It seeks to invalidate a statute aimed at others, i.e., out-of-state motor vehicle dealers who can challenge the statute themselves.
We hold that To-Ro does not have a sufficient, "substantial interest" in the constitutional rights asserted to present a justiciable controversy between To-Ro and the State. Washington Beauty College, 195 Wash. at 165, 80 P.2d 403.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
SEINFELD, J., and HUNT, J., concur.
NOTES
[1] U.S. CONST. amend. I.
[2] U.S. CONST. amend. XIV.
[3] U.S. CONST. art. I, § 8, cl. 3.
[4] The advisory verdict was sealed by the trial court. DOL has requested that the verdict be unsealed, and we have done so under separate order. Under GR 15(h), "[a] file, or any portion of it, sealed in the trial court shall be made available to the appellate court in the event of an appeal. Cases sealed in the trial court shall be sealed from public access in the appellate court subject to further order of the appellate court." See also GR 15(d)(2).
[5] Under RCW 46.70.025, "[t]he director may by rule waive any requirements pertaining to a vehicle dealer's established place of business if such waiver both serves the purposes of this chapter and is necessary due to unique circumstances such as a location divided by a public street or a highly specialized type of business."