27 P.3d 1149 (2001)
144 Wash.2d 403
TO-RO TRADE SHOWS, d/b/a O'Loughlin Trade Shows, Petitioner,
v.
Grant COLLINS and Kathy Barrosfriedt, in her official capacity as the Director of the Department of Licensing, The State of Washington, and Robert Smith, and John Does 1 Through 5, Respondents.
No. 69753-1.
Supreme Court of Washington, En Banc.
Argued February 13, 2001.
Decided August 2, 2001.
*1150 Mann, Johnson, Wooster & McLaughlin, Richard H. Wooster, Tacoma, for Petitioner.
Christine Gregoire, Atty. Gen., Rene David Tomisser, Asst. Atty. Gen., Olympia, for Respondent.
Daniel R. Warncke, Daniel F. Oberklein, Cincinnati, for Amicus Curiae.
OWENS, J.
We must decide whether a producer of recreational-vehicle (RV) trade shows presented a justiciable controversy under Washington's Uniform Declaratory Judgments Act (chapter 7.24 RCW) (the Act). To-Ro Trade Shows (To-Ro) brought a declaratory judgment action against the State after the Department of Licensing (DOL) enforced the dealer licensing statute (RCW 46.70.021) at To-Ro's 1994 Spokane RV show. To-Ro contended that the State's closure of that portion of its show dedicated to an unlicensed RV dealer violated To-Ro's rights under the Commerce Clause and the First and Fourteenth Amendments to the United States Constitution. The trial court dismissed To-Ro's claims, and the Court of Appeals affirmed, concluding that, because To-Ro had failed to "demonstrate a direct and certain financial impact" arising from the State's enforcement of the licensing statute, To-Ro lacked standing to pursue declaratory relief. To-Ro Trade Shows v. Collins, 100 Wash.App. 483, 493, 997 P.2d 960 (2000). We agree and hold that To-Ro could not maintain an action for declaratory relief because it failed to present an actual, immediate dispute in which it had a direct, substantial interest. We affirm the Court of Appeals.

FACTS
To-Ro produces a variety of consumer trade shows, including RV, boat, home and garden, and sportsman shows. To-Ro secures a site for an event, rents space to exhibitors, and charges admission to the public. To-Ro scheduled an RV show for April 7-10, 1994, at the Interstate Fairgrounds in Spokane. When a number of dealers in the local RV association decided not to rent space at the show, To-Ro invited an RV dealer from Coeur d'Alene, Idaho, to participate. Aware that the dealer, Lake City RV, was licensed to conduct business in Idaho but not in Washington, To-Ro's Robert O'Loughlin spoke with Grant Collins, a DOL investigator. Collins told O'Loughlin that a license *1151 was required and that the dealer should not participate without one. O'Loughlin then contacted DOL supervisors in Tacoma and Spokane, who also confirmed that an out-of-state dealer was required to have a Washington license in order to participate.
Before the event opened, DOL received an anonymous tip that an unlicensed dealership had brought its vehicles to the fairgrounds. Collins went to the fairgrounds and gave Douglas Foster, Lake City RV's sales manager, written notice that his dealership's participation would be unlawful. On Friday, the second day of the show, Collins returned to find that Lake City RV was indeed participating in the show. At a meeting in O'Loughlin's office, O'Loughlin tried to persuade Collins that Lake City RV could participate as long as it placed "For Display Only" signs on its vehicles, posted no prices, and sold no vehicles, but after checking with his superiors, Collins reiterated that a license was required for Lake City RV to participate.[1] While at the show on Friday, Collins observed that Lake City RV did not have any restrictive "For Display Only" signs on the vehicles. Lake City RV had posted manufacturer's suggested retail prices on its vehicles, as well as handwritten signs reading "show special" or "show prices." Report of Proceedings (RP) at 358-60. Collins asked Lake City RV to close and lock its vehicles, and Lake City RV complied. After the Lake City RV exhibit was closed, O'Loughlin posted a note on its vehicles stating that "show prices are good thru next Sunday April 17th." RP at 360-61, Ex. 13.
Alleging that DOL's enforcement of the statute violated To-Ro's constitutional rights under the Commerce Clause and the First and Fourteenth Amendments, To-Ro filed a declaratory judgment action in March 1995 challenging the constitutionality of RCW 46.70.021; To-Ro sought damages under 42 U.S.C. § 1983 and also claimed that DOL had tortiously interfered with To-Ro's business expectancy.[2] O'Loughlin claimed that, because Lake City RV was a major exhibitor in the Spokane RV show, patrons had demanded refunds after its exhibit was closed. O'Loughlin asserted that, to compensate for the exhibit's closure, he had offered free admission on Friday evening and had reduced ticket prices for Saturday and Sunday, and he cited as an additional loss his refund of Lake City RV's rental fee of $4,800.
On cross-motions for summary judgment, the trial court dismissed To-Ro's Commerce Clause claim for lack of standing. The court also dismissed To-Ro's claim that RCW 46.70.021 violated the First Amendment on its face, but the court simultaneously entered a second order ruling that the statute neither prohibited unlicensed dealers from displaying and pricing their RVs at trade shows nor precluded product representatives from accompanying those displayed vehicles.
When the case went to trial, the parties disagreed as to the meaning of the second order, so the court prohibited any mention of the order in opening statements. At the close of the evidence and outside of the jury's presence, the court dismissed all of To-Ro's causes of action. The court ruled that, because Lake City RV was unlicensed, it had no property interest that would give rise to a procedural due process claim and that, even if Lake City RV had had such a claim, To-Ro lacked standing to assert it. Having determined that To-Ro lacked standing to raise its Commerce Clause and due process claims, the court dismissed To-Ro's claim for damages under 42 U.S.C. § 1983, accepting as a *1152 second basis for dismissal the State's qualified immunity defense.
The court also addressed the implications of the second summary judgment order, which it termed a "stipulation ... without the court's independent ruling." RP at 517. In the court's view, the transcript of the summary judgment hearing showed that the court had never ruled on whether RCW 46.70.021 prohibited an unlicensed dealer from participating in a trade show on a "display only" basis. The court recognized that at trial the State had argued a position contrary to the stipulation and that To-Ro had not objected. Thus, contrary to the disputed order, the court ruled "that displaying products at a trade show where the products are physically present with the public is engaging in business ... as contemplated by the Department of Licensing regulations or statutes." RP at 586. The court rejected To-Ro's claim that RCW 46.70.021 violated the First Amendment. In ruling that the statute had been fairly applied to exclude Lake City RV, the court foreclosed the tortious interference claim because, as the State argued and the court agreed, To-Ro could have no valid business expectancy from a party in violation of the law.
After dismissing all claims, the court submitted, with the parties' approval, three questions to the jury.[3] The court reasoned that, if the State were indeed bound by the second summary judgment order (wherein the parties had stipulated that the licensing statute did not apply to dealers participating on a "display only" basis), the jury would need to resolve certain factual questions. Consequently, the jury was asked whether To-Ro had proven (1) that no prices were ever displayed on Lake City RV's vehicles, (2) that "For Display Only" signs had been posted on Lake City RV's vehicles at all times during the show, and (3) that the State's closure proximately caused To-Ro damages. The verdict form also asked the jury to state the amount of damages, should it answer the third question affirmatively. The jury answered "No" to all three questions.[4]
To-Ro appealed. The Court of Appeals affirmed the trial court, holding that To-Ro lacked standing to challenge the State's enforcement of RCW 46.70.021 against Lake City RV. To-Ro Trade Shows, 100 Wash. App. at 493-94, 997 P.2d 960. We granted To-Ro's petition for review.

ISSUE
Did To-Ro present a justiciable controversy under the Uniform Declaratory Judgments Act?

ANALYSIS
To-Ro sought a declaration under the Uniform Declaratory Judgments Act that Washington's dealer licensing statute, RCW 46.70.021, unconstitutionally precluded unlicensed dealers from displaying their vehicles at trade shows held in Washington. The challenged licensing statute, which aims to protect Washington consumers from "frauds, impositions, and other abuses," makes it "unlawful for any person, firm, or association to act as a vehicle dealer ..., to engage in business as such, ... [or] solicit sales as such, ... without first obtaining and holding a current license as provided in this chapter." RCW 46.70.005, .021 (emphasis added). The trial court dismissed To-Ro's claims attacking the statute, and the Court of Appeals affirmed, denying relief under the Act. Recalling the Act's provision that "[a]ll orders, judgments and decrees under this chapter may be reviewed as other orders, judgments *1153 and decrees," we apply the customary principles of appellate review. RCW 7.24.070; see Nollette v. Christianson, 115 Wash.2d 594, 599-600, 800 P.2d 359 (1990). Because To-Ro has contested no factual findings but seeks reversal of the trial court's legal conclusions, our review of the trial court's denial of declaratory relief is de novo. Nollette, 115 Wash.2d at 600, 800 P.2d 359.
The Act provides in part that "[a] person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. In Diversified Industries Development Corp. v. Ripley, 82 Wash.2d 811, 814-15, 514 P.2d 137 (1973), we acknowledged that, "in the absence of the intrusion of issues of broad overriding public import, [we had] steadfastly adhered to the virtually universal rule that, before the jurisdiction of a court may be invoked under the act, there must be a justiciable controversy." We defined a justiciable controversy as "(1)... an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive." Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137; see also Wash. Beauty Coll., Inc. v. Huse, 195 Wash. 160, 164-65, 80 P.2d 403 (1938). Inherent in these four requirements are the traditional limiting doctrines of standing, mootness, and ripeness, as well as the federal case-or-controversy requirement.[5] In sum, the four justiciability factors must "coalesce" to ensure that the court will be rendering a final judgment on an actual dispute between opposing parties with a genuine stake in the resolution. Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137.
We agree with the Court of Appeals that To-Ro failed to meet the third justiciability requirement. See To-Ro Trade Shows, 100 Wash.App. at 493, 997 P.2d 960. To-Ro did not show that its "interests" in the dispute over DOL's enforcement of the dealer licensing statute were "direct and substantial" as opposed to "potential, theoretical, abstract or academic." Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137. Under the Act, "[o]ne may not ... challenge the constitutionality of a statute unless it appears that he will be directly damaged in person or in property by its enforcement." DeCano v. State, 7 Wash.2d 613, 616, 110 P.2d 627 (1941) (emphasis added); see also Walker v. Munro, 124 Wash.2d 402, 412, 879 P.2d 920 (1994) (finding that petitioners' failure to identify any "actual, concrete harm" caused by Initiative 601 precluded declaratory action). The jury rejected To-Ro's claim that the State's 1994 closure of the Lake City RV exhibit had damaged To-Ro.[6] To the extent that To-Ro contended that the licensing statute had an adverse financial impact beyond the alleged harm from the Lake City RV closure, To-Ro failed to show that its interests were direct and substantial, rather than contingent and inconsequential.
Support for this conclusion is found in prior analogous cases. In Washington Beauty College, a hairdressing school challenged a Washington statute that required a person to obtain a high school education as a *1154 prerequisite to becoming a licensed hairdresser. The school claimed to have enrolled a number of students who would be unable to procure a high school education after completing the course. The school thus asserted that the statute unconstitutionally interfered with its right to contract with those students and with other prospective students. Affirming the trial court, this court concluded that "[n]o showing ha[d] been made of any direct or substantial injury threatened or suffered by [the beauty college] so as to present a justiciable issue." Washington Beauty Coll., 195 Wash. at 165, 80 P.2d 403 (emphasis added). The school's "interest [was] too remote to entitle it to invoke the declaratory judgment[s] act." Id. (emphasis added). While it might have been conceivable that the additional statutory requirement could have discouraged some enrolled or prospective students, the school could not prove an immediate, significant effect on its enrollment.
We considered a similar circumstance in Yakima County (West Valley) Fire Protection District No. 12 v. City of Yakima, 122 Wash.2d 371, 858 P.2d 245 (1993). There, in order to secure sewer service from the City of Yakima, homeowners outside the city limits signed agreements binding them to support a future annexation. The homeowners and the local fire district later sought a declaratory judgment nullifying the agreements. On direct review, we affirmed the trial court's dismissal of the fire district for lack of standing. We reasoned that, while the fire district's value would be diminished by annexation, the homeowners' annexation agreements did not directly affect the fire district because those agreements did not ensure annexation. They provided only 66 percent of the necessary 75 percent of the property value required for annexation, and a successful annexation petition would remain vulnerable to further governmental review. Thus, although the agreements increased the likelihood of annexation, the fire district's interest in their validity could not satisfy the justiciability requirement of a direct and substantial interest in the dispute over the agreements' validity. Yakima County (West Valley) Fire Prot. Dist. No. 12, 122 Wash.2d at 379-80, 858 P.2d 245. In sum, just as the losses of the beauty college were contingent on the intervening event of lower enrollment, the losses that the fire district anticipated were dependent on the intervening prospect of annexation; absent any certainty of annexation or lower enrollment, the plaintiffs in the two cases could not satisfy the third justiciability factor.
To-Ro did not prove that DOL's enforcement of the statute against unlicensed dealers had harmed (or would harm) To-Ro directly and substantially. As a consumer show promoter, To-Ro makes money by renting exhibit space to dealers and charging admission to patrons. To-Ro did not show that there was a pool of RV dealers who wanted to forgo the licensing process and display their vehicles with no prices affixed. To the contrary, motor vehicle dealers testified that it was unimaginable that dealers would incur the expense of participating in an RV trade show if they were not allowed to sell vehicles at the show. Moreover, as the State pointed out, "[i]t is likely that licensed dealers would oppose unlicensed dealers enjoying the benefits of engaging in business in Washington without paying for a license." Resp't's Answer to Amicus at 9. Nor did To-Ro show that the statute caused To-Ro to miss out on a large market of patrons who were eager to attend shows featuring unlicensed out-of-state dealers exhibiting vehicles bearing no price tags. Therefore, just as we determined that the enforcement of the statute in Washington Beauty College and the validation of the agreements in Yakima County (West Valley) Fire Protection District No. 12 caused no direct, substantial financial harm to the beauty college or the fire district, here, we conclude that DOL's enforcement of the statute's prohibition against display by unlicensed dealers caused no demonstrably direct or substantial financial harm to To-Ro.
This third justiciability requirement of a direct, substantial interest in the dispute encompasses the doctrine of standing. To have standing to challenge the constitutionality of a statute, a party must show, in addition to "sufficient factual injury," that "`the interest sought to be protected ... is arguably within the zone of interests to be protected *1155 or regulated by the statute or constitutional guarantee in question.'" Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 494, 493, 585 P.2d 71 (1978) (quoting Ass'n of Data Processing Serv. Org., Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). To-Ro asserts that RCW 46.70.021 violates its First Amendment rights by prohibiting it from allowing unlicensed dealers to display their vehicles at its trade shows. But plainly, To-Ro's interest in seeking declaratory relief lies outside the zone of interests regulated by RCW 46.70.021. The purpose of the dealer licensing statute is to protect the public from "frauds, impositions, and other abuses" by vehicle dealers. RCW 46.70.005. To-Ro is not a vehicle dealer, licensed or otherwise, nor is it acting in a representative capacity for any organization of consumers or vehicle dealers. See Vovos v. Grant, 87 Wash.2d 697, 700, 555 P.2d 1343 (1976) (interest sufficient to confer standing may be shown in personal or representative capacity). The interest To-Ro is seeking to protect is its own theoretical interest in increasing the number of exhibitors participating in its trade shows. To-Ro's potential financial interest as a show promoter clearly does not coincide with the statute's aim of protecting consumers from fraudulent or abusive conduct by vehicle dealers. We must conclude that, because To-Ro is not within the zone of interests regulated in RCW 46.70.021, it lacks standing to challenge the statute on First Amendment grounds; any such challenge would belong to the excluded dealer, not To-Ro.
Although the Court of Appeals confined its analysis to the third justiciability factor, we reach the additional conclusion that To-Ro likewise failed to satisfy the first requirementdemonstration of "an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement." Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137. On the one hand, were we to limit our focus to the State's 1994 closure of the Lake City RV exhibit, we would necessarily conclude that To-Ro's dispute with the State is moot. Even if we were to determine that the dealer licensing statute should not have been enforced against an unlicensed dealer participating on a "display only" basis, such a pronouncement would be academic because the jury in this case made the uncontested factual determination that Lake City RV had not participated on a "display only" basis. If, in the alternative, we decline to limit our consideration of the dispute between To-Ro and the State to the 1994 Lake City RV closure, then the dispute To-Ro presents is "dormant, hypothetical, [or] speculative." Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137. As discussed above, To-Ro has not shown that there are unlicensed dealers waiting in the wings to display their unpriced vehicles at a To-Ro trade show. Just as we have repeatedly refused to find a justiciable controversy where the event at issue has not yet occurred or remains a matter of speculation, we do not find a justiciable controversy here. See, e.g., Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137 (where minor child's tort claim against lessor remained "an unpredictable contingency," the matter was "not ripe for declaratory relief"); Port of Seattle v. Wash. Utils. & Transp. Comm'n, 92 Wash.2d 789, 806, 597 P.2d 383 (1979) (where issue of Port's future actions on certain contract rights "appear[ed] to be founded on a hypothetical factual situation," declaratory judgment was inappropriate); DiNino v. State ex rel. Gorton, 102 Wash.2d 327, 331, 684 P.2d 1297 (1984) (where party who was neither pregnant nor terminally ill challenged statute nullifying health care directive of pregnant or terminally ill patient, cause was not "ripe" for declaratory judgment); Lawson v. State, 107 Wash.2d 444, 460, 730 P.2d 1308 (1986) (where railroad had not abandoned right of way and county had expressed no intent to acquire it, property owners' challenge to statutes permitting recreational public use of rights of way was "premature").
Where the four justiciability factors are not met, "the court steps into the prohibited area of advisory opinions." Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137. We exercise our discretion and deliver advisory opinions only "on those rare occasions where the interest of the public in the resolution of an issue is overwhelming" *1156 and where the issue has been "adequately briefed and argued." In re Deming, 108 Wn.2d 82, 122-23, 736 P.2d 639, 744 P.2d 340 (1987) (Utter, J., concurring) (quoting Citizens Council Against Crime v. Bjork, 84 Wash.2d 891, 895, 529 P.2d 1072 (1975)); see also Seattle Sch. Dist. No. 1, 90 Wash.2d at 490, 585 P.2d 71. We decline to deliver an advisory opinion in this case. To-Ro's commercial interest in including unlicensed dealers in its trade shows does not appear to be a matter of "broad overriding public import." Diversified Indus. Dev. Corp., 82 Wash.2d at 814, 514 P.2d 137. That dealers participating in such trade shows are expected to be licensed was not a matter of confusion; both To-Ro and Lake City RV knew before the show that a license was required, and To-Ro's own manual referred to the licensing requirement. Far from being raised as a matter of overwhelming public interest, this challenge to the dealer licensing statute arose out of a particular situation in 1994 when To-Ro attempted to fill out an under-booked show by extending a belated invitation to an unlicensed dealer.

CONCLUSION
While we have acknowledged that the Uniform Declaratory Judgments Act provides a procedure "peculiarly well suited to the judicial determination of controversies concerning constitutional rights and ... the constitutionality of legislative action," we have resolutely maintained that no decisions should be made under the Act absent a "justiciable controversy." Seattle Sch. Dist. No. 1, 90 Wash.2d at 490, 585 P.2d 71; Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137. The criteria for identifying a justiciable controversy are now well settled. To satisfy our four-factor justiciability test, a party must demonstrate a direct, substantial interest in an actual, immediate dispute with a truly adverse party, and that dispute must be one that the court's decision will conclusively resolve. Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137. Folded into this test are the familiar restraint doctrines. An actual, immediate dispute cannot be moot and must be ripe, and a party lacking a direct, substantial interest in the dispute will lack standing.
To-Ro's challenge to the State's enforcement of RCW 46.70.021, the dealer licensing statute, does not present a justiciable controversy under the Act. We agree with the Court of Appeals that To-Ro failed to prove a direct, substantial financial interest in the dispute sufficient to confer standing, and we further find that, in light of the jury's factual findings, To-Ro was unable to demonstrate an actual, immediate dispute. Having determined that To-Ro did not establish a justiciable controversy and that this case presents no issues of overwhelming public importance, we affirm the Court of Appeals.
ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.
SANDERS, J., dissenting.
The majority should not be allowed the luxury of denying To-Ro Trade Shows its day in court through unchallenged and inconsistent application of the standing doctrine. We must avoid ad hoc, result-oriented decision making which cripples private litigants who seek to protect their constitutional rights against government infringement.
The majority here concludes To-Ro Trade Shows lacked standing to pursue declaratory relief "because it failed to present an actual, immediate dispute in which it had a direct, substantial interest." Majority at 1150. I disagree.
According to the Uniform Declaratory Judgments Act (chapter 7.24 RCW), "A person... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. To-Ro asserts its rights, status, and legal relations are affected by the Washington dealer licensing statute, RCW 46.70.021. The dealer licensing statute provides in part:
It is unlawful for any person, firm, or association to act as a vehicle dealer or vehicle manufacturer, to engage in business as such, serve in the capacity of such, advertise himself, herself, or themselves as such, solicit sales as such, or distribute or transfer vehicles for resale in this state, without first obtaining and holding a current *1157 license as provided in this chapter....
RCW 46.70.021. To-Ro asserts the State's enforcement of this statute affects its legal rights, and questions the construction and validity of the statute pursuant to the Uniform Declaratory Judgments Act. Specifically To-Ro "seeks a declaration that RCW 46.70 is unconstitutional to the extent advertising, display or exhibition of products and pricing at a trade show is reserved exclusively to State licensed dealers." Pet. for Discretionary Review at 7.
We have previously held "before the jurisdiction of a court may be invoked under the act, there must be a justiciable controversy." Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973). A justiciable controversy is one
(1) which is an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.
Id. To-Ro meets each of these four factors and thus has standing to seek relief under the Uniform Declaratory Judgments Act, more so, I think, than did Amalgamated Transit Union which feared the loss of government expenditures through the initiative's repeal of a tax for general revenue purposes. Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 11 P.3d 762 (2000).
To-Ro is in the business of producing consumer shows. Producers of such events make money in two ways: (1) they rent space in a convention center or exhibit hall and then sell exhibit space to exhibitors; and (2) they charge an admission fee to members of the general public who wish to attend the show. Amicus Br. at 3. One of the exhibitors to whom To-Ro sold exhibit space for its 1994 Spokane Spring RV Show was Lake City RV. Trade show patrons demanded refunds directly from To-Ro when the Department of Licensing shut down the Lake City RV exhibit. Report of Proceedings (RP) at 228. To-Ro also had to offer free admission on the evening the exhibit was shut down and reduced ticket prices for the remainder of the show. RP at 229-31. Finally, To-Ro gave Lake City RV a refund of its $4,800 rental fee. RP at 262. To-Ro lost money as a result of the enforcement of this statute and therefore has standing to challenge it.
The majority erroneously concludes To-Ro does not satisfy the first prong of the test for determining whether a plaintiff presents a justiciable controversy for purposes of the Uniform Declaratory Judgments Act by weighing the facts. However we must judge the existence of a justiciable controversy from the facts as alleged by the plaintiff, not by the facts as ultimately proved. See Acme Finance Co. v. Huse, 192 Wash. 96, 107, 73 P.2d 341 (1937).
To-Ro's pleadings clearly present an actual dispute or at least the mature seeds of one. Moreover the factual record establishes To-Ro's loss of revenue is real and demonstrable. To-Ro's assertionthat it will continue to lose money if dealers who are not licensed by the State of Washington are prohibited from participating in trade shows, even if they do so only to advertise their products is a logical imperative. The majority's criticism that To-Ro failed to show "that there are unlicensed dealers waiting in the wings to display their unpriced vehicles at a To-Ro trade show" is wrong. Majority at 1155. There very plainly are such dealers; Lake City RV is among them. Moreover, as amicus argues, the success of a trade show is contingent upon the reputation the show has with exhibitors and the general public. Amicus Br. at 3. Therefore the negative impact of forcing To-Ro to close a substantial portion of its 1994 Spokane Spring RV Show will at least arguably affect its ability to attract exhibitors and attendees in the future. Id. We are not, as the majority suggests, faced with a situation "where the event at issue has not yet occurred or remains a matter of speculation." Majority at 1155. Here the event, To-Ro's loss, has occurred and will arguably continue to occur.
Neither the majority here nor the Court of Appeals below contends the second justiciability *1158 requirement is not met. To-Ro and the Department of Licensing have genuine and opposing interests. To-Ro asserts RCW 46.70.021 is unconstitutional and the Department of Licensing asserts the constitutional challenge to the statute is without merit. Pet. for Discretionary Review at 5; Answer to Pet. at 9.
The majority and the Court of Appeals do however agree "To-Ro did not show that its `interests' in the dispute over DOL's [Department of Licensing] enforcement of the dealer licensing statute were `direct and substantial' as opposed to `potential, theoretical, abstract or academic.'" Majority at 1153 (quoting Diversified Indus. Dev. Corp., 82 Wash.2d at 815, 514 P.2d 137). I disagree. To-Ro lost a substantial sum of money when DOL shut down the Lake City RV exhibit. It had to give refunds to disgruntled patrons, open its gates for free, and refund Lake City RV's $4,800 registration fee. This is undisputed. The majority correctly states, "Under the Act, `[o]ne may not ... challenge the constitutionality of a statute unless it appears that he will be directly damaged in person or in property by its enforcement.'" Majority at 1153 (quoting De Cano v. State, 7 Wash.2d 613, 616, 110 P.2d 627 (1941)). Notwithstanding, the majority then summarily dismisses the fact that To-Ro lost well over $5,000 as a direct result of DOL's enforcing RCW 46.70.021. The majority simply ignores withdrawal of an exhibit from a trade show directly injures the producer of the show. A trade show producer makes money by renting space to exhibitors and charging admission to patrons. The removal of an exhibitor from a trade show necessarily has a direct impact on the business of the trade show producer. I think To-Ro not only has alleged injury, it has proved it.
Further, the cases cited by the majority to support its conclusion must be distinguished. Yakima County (West Valley) Fire Protection District No. 12 v. City of Yakima, 122 Wash.2d 371, 379, 858 P.2d 245 (1993) specifically recognizes "[p]arties whose financial interests will be affected by the outcome of a declaratory judgment action have standing." We ultimately determined the fire district in Yakima County lacked standing to seek declaratory judgment because it was not directly affected by the homeowner agreements[1] it sought to nullify. Id. The fire district's interests would be affected only if the City of Yakima actually annexed the properties subject to the homeowner agreements. Id. at 380, 858 P.2d 245. While the homeowner agreements arguably made annexation easier, they did not make annexation a fait accompli, and therefore any damage to the interests of the fire district remained entirely speculative. Id. But the situation in Yakima County is markedly different from the one presented here. To-Ro has suffered a demonstrable financial loss resulting from DOL's enforcement of the dealer licensing statute. Moreover To-Ro's financial interests will be affected by the outcome of the declaratory judgment it seeks: If the dealer licensing statute is, as To-Ro argues, unconstitutional, then To-Ro will be permitted to sell exhibit space at its trade shows to all exhibitors like Lake City RV.
Similarly, the majority's reliance on Washington Beauty College, Inc. v. Huse, 195 Wash. 160, 80 P.2d 403 (1938) is misplaced. Washington Beauty College challenged the validity of section 3(a) of chapter 215, Laws of 1937, which required hairdressers licensed by the State to hold a high school diploma. Washington Beauty College, 195 Wash. at 161, 80 P.2d 403. The college filed suit pursuant to the Uniform Declaratory Judgments Act asserting the statute was unconstitutional. Id. The college argued the statute adversely affected its ability to attract and retain students and it nullified contracts with existing students. Id. at 162, 80 P.2d 403. We determined the college lacked standing to sue because its interests were too remote. Id. at 165, 80 P.2d 403. We found "[n]o showing has been made of any direct or substantial injury threatened or suffered by appellant so as to present a justiciable issue." Id.
*1159 To-Ro however presents a different situation. Here the party seeking declaratory relief has suffered a direct and substantial injury including loss of cash and reputation. In contrast to the injury alleged in Washington Beauty College and Yakima County which was speculative and uncertain, the injury here is concrete and demonstrable.
To-Ro also meets the fourth justiciability factor. As previously indicated, a judicial determination of the constitutionality of the dealer licensing statute will resolve the dispute between To-Ro and DOL. If the statute is found unconstitutional, To-Ro must be permitted to sell exhibit space to out-of-state exhibitors who wish to participate in a trade show to advertise their products and should recover its damages.
In support of its First Amendment claim To-Ro likens its situation to that of a bookseller or theater owner, entities that have traditionally been given standing to vindicate the rights of third parties. To-Ro asserts it is a "`clearinghouse' for expression and as a practical matter is in a far better position to vindicate First Amendment rights, ensure public access and thwart excessive governmental intrusion upon the free exchange of ideas and information than individual show patrons or exhibitors." Pet. for Discretionary Review at 8. The Ninth Circuit concluded in Cinevision Corp. v. City of Burbank, 745 F.2d 560, 568 (9th Cir.1984), "a concert promoter, like a bookseller or theater owner, is a type of `clearinghouse' for expression." The court further concluded the promoter, rather than the individual patrons or performers, was in the best position to vindicate First Amendment rights. Id. To-Ro argues the same principle should apply to trade show promoters. To-Ro asserts the dealer licensing statute impermissibly infringes on the First Amendment rights of trade show exhibitors and, as a promoter of trade shows, it is in the best position to vindicate those rights. Pet. for Discretionary Review at 8.
The majority asserts "To-Ro's interest in seeking declaratory relief lies outside the zone of interests regulated by RCW 46.70.021." Majority at 1154. But To-Ro must only show "`"the interest sought to be protected ... is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."'" Majority at 1154 (emphasis added) (quoting Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 494, 585 P.2d 71 (1978)). Here To-Ro is asserting the First Amendment right to use the forum it provides. DOL's enforcement of the dealer licensing statute affects the constitutional guarantees provided in the First Amendment. Nor does it defeat First Amendment standing if To-Ro is able to turn a profit on the expressive conduct of exhibitors who participate in its trade shows. See Cinevision, 745 F.2d at 567 ("[E]ven though concert promoters generally promote concerts for profit, they still enjoy the protections of the first amendment."). Moreover, as recognized by Seattle School District No. 1, we are supposedly liberal in our view of who has standing to seek declaratory relief. Seattle Sch. Dist. No. 1, 90 Wash.2d at 493, 585 P.2d 71. See also RCW 7.24.120 ("This chapter is declared to be remedial ... and is to be liberally construed and administered.").
Finally, I am troubled by the majority's reliance on the jury's advisory verdict in this case. Majority at 1153. At the point the jury deliberated, there was really nothing for them to decide since all To-Ro's claims had been dismissed for lack of standing. Quixotically three questions were sent to the jury on an advisory basis only. Id. I cannot fathom why this Court should rely on a "highly unusual" advisory jury verdict that "has no binding legal effect." Majority at 1153 n. 6. Moreover the issue is whether To-Ro had standing, not whether it proved its damages to the jury's satisfaction. In any event a defense verdict on damages does not mean the plaintiff lacks standing to pursue the litigation, only that it couldn't convince the jury by a preponderance of evidence that it should be compensated. The majority's analysis is bootstrapping.
Based on the foregoing I believe To-Ro has presented a justiciable controversy and therefore has standing to invoke the Uniform Declaratory Judgments Act.
Accordingly, I dissent.
NOTES
[1] DOL's position was consistent with To-Ro's own manual for exhibitors, which stated that participating dealers must obtain Washington licenses and mentioned no licensing exception for vehicles that were marked "For Display Only."
[2] To-Ro's complaint, filed March 6, 1995, in Spokane County Superior Court (No. 95-2-01225-1), was not included in the clerk's papers. Under RAP 9.6(b)(1)(D), To-Ro was required to include in the clerk's papers, if not the final complaint and answer, a final pretrial order or other pleadings setting out the issues to be tried. In its summary judgment memorandum, To-Ro states that it seeks "a legal determination that RCW 49.70.021[sic] and RCW 49.70.023[sic] are unconstitutional on their face" and that "the manner in which the State carried out the enforcement actions ... was unconstitutional." Clerk's Papers (CP) at 78. To-Ro's trial brief provides that "[t]his case now comes on for trial on the plaintiff's claims for damages that the conduct of the state agents tortiously interfered with its business relations in violation of 42 U.S.C. § 1983." CP at 482.
[3] In its notice of appeal (which, contrary to RAP 9.6(b)(1)(A), To-Ro did not include in the clerk's papers), To-Ro refers to a March 10, 1998, order "[s]ubmitting advisory interrogatories to the jury." The Court of Appeals termed it an "advisory verdict." To-Ro Trade Shows v. Collins, 100 Wash.App. 483, 488 n. 4, 997 P.2d 960 (2000). The verdict form simply bears the title "Verdict," but under CR 49(a) this was a special verdict, a series of findings on three issues of fact. CP at 549. That this was a special verdict form was made clear in the trial judge's instructions to the jury: "You will be furnished the exhibits admitted into evidence, these instructions, and a special verdict form which consists of several questions for you to answer." Report of Proceedings (RP) at 538 (Instruction 7) (emphasis added).
[4] See CP at 549. The Court of Appeals entered an order on April 21, 2000, unsealing the verdict and making it a public record.
[5] As we have noted, "under the Declaratory Judgments Act, the requirement of standing tends to overlap justiciability requirements." Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 203, 11 P.3d 762 (2000) (citing 15 Lewis H. Orland & Karl B. Tegland, Washington Practice: Trial Practice, Civil § 602, at 394 (5th ed.1996)). See also Philip A. Talmadge, Understanding the Limits of Power: Judicial Restraint in General Jurisdiction Court Systems, 22 Seattle U.L.Rev. 695, 717 (1999).
[6] By repeatedly asserting that the State's enforcement of the dealer licensing statute harmed To-Ro financially, the dissent simply champions To-Ro's unproven claims. Even though the trial judge's submission of the special verdict form to the jury was highly unusual and has no binding legal effect, the jury in this six-day trial received To-Ro's evidence, heard its closing argument on damages, and concluded that the closure of the Lake City RV display did not proximately cause To-Ro's damages. See RP at 541-46, 549-50, 557-61.
[1] To receive sewer service from the City of Yakima landowners were required to sign a future petition for annexation. Yakima County (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 375, 858 P.2d 245 (1993).