IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BENTON COUNTY, a political subdivision of the State of Washington, | ) ) ) | No. 32912-7-III |
| Respondent, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| DONNA ZINK, | ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Donna Zink threatened suit against Benton County for its decisions not to make electronic copies of paper records responsive to her public records request, and to charge her the outside vendor's cost to make such electronic copies. Benton County filed a declaratory action against Ms. Zink and moved for summary judgment, seeking confirmation that its decisions were lawful under the Public Records Act (PRA), chapter 42.56 RCW. The trial court granted Benton County's summary judgment motion and entered a declaratory judgment. Ms. Zink appeals. We affirm the trial court's order and declaratory judgment.

FACTS

In August 2013, Ms. Zink e-mailed a PRA request to the Benton County prosecutor's office "to review and/or copy all SSOSA [special sex offender sentencing alternative] forms as well as all victim impact statements filed and maintained anywhere in Benton County." Clerk's Papers (CP) at 180. Over time, Ms. Zink's request was narrowed to records relating to convicted sex offenders and, in April 2014, she withdrew her request for any future victim impact statements. Benton County estimates that Ms. Zink's request will not be fulfilled until 2023.

This dispute stems from Ms. Zink's persistence on receiving all responsive documents from Benton County in electronic format. Under Benton County Code 5.14.100, if an electronic record "necessitates redaction due to an exemption, the County is under no obligation to provide the record electronically." CP at 115. Further, Benton County Code 5.14.120(c) provides "[a]ny request for more than twenty-five (25) pages of documents . . . may be sent by the County to a private copy shop for copying, in which case the fee shall be the actual charge imposed for copying." CP at 118.

Shortly after making the request, Ms. Zink inquired into the cost of receiving the records in electronic format. Benton County responded:

> We do not have the resources to copy all the original records (which will involve potentially thousands), redact them, and then scan them back into electronic form for you. The Mitchell[1] court and Mechling[2] court make clear such duplication of effort is outside the county's obligations under the PRA.

CP at 97. However, Benton County offered to accommodate Ms. Zink by having an outside vendor create electronic copies of the records for 25 cents per page. The 25 cents per page cost was the lowest of three outside vendor quotes. Under this method, the scanned-in electronic copies would be created on the outside vendor's server.

After discovering that some of the redacted paper copies of records she was receiving were also held in electronic format, Ms. Zink made it clear that she was requesting all records in electronic format and failure to provide the records in electronic format was "a violation of the PRA." CP at 79. By the time of the trial court proceedings resulting in this appeal, Benton County had produced 91 records encompassing 561 pages. Of the 91 records, 66 were held by the Benton County prosecutor's office in paper format and 25 were held in electronic format. Moreover, 19 of the 25 electronic records required redaction of information exempt under the PRA.

---

[1] *Mitchell v. Dep't of Corr.*, 164 Wn. App. 597, 277 P.3d 670 (2011).

[2] *Mechling v. City of Monroe*, 152 Wn. App. 830, 222 P.3d 808 (2009).

In responding to Ms. Zink's request, the Benton County prosecutor's office has redacted the applicable 19 electronic records by hand and provided Ms. Zink with paper copies. The employee tasked with responding to Ms. Zink's request does not have access to software allowing electronic redaction, and would therefore have to "print the original electronic document, physically redact it and then scan the paper document and save it onto the County's server" in order to provide Ms. Zink with electronic copies. CP at 121. Benton County believes this "would result in the creation of data about that electronic document and consume storage space on the server." CP at 128. The electronic records that do not need redaction have been provided to Ms. Zink in electronic format.

In November and December 2013, Ms. Zink e-mailed Benton County multiple times demanding, with thinly-veiled litigation threats, electronic copies of the records. Benton County reiterated its outside vendor offer to Ms. Zink. In early January 2014, Ms. Zink e-mailed Benton County, "**either send me the records as requested or wait until we go to court and find out if Benton County has the right to refuse to provide the requested records in electronic format as requested.**" CP at 89 (bold in original). In late January 2014, rather than wait for potential per diem penalties to accumulate, Benton County filed a declaratory action seeking a court determination of its obligations under the PRA.

Benton County's declaratory action sought a judicial determination that:

(a) the Public Records Act does not mandate that a public agency create an electronic public record if it does not possess the public record in electronic form; (b) the Public Records Act does not mandate that a public agency create a second electronic record with respect to an electronic record it possesses but which must be redacted under the terms of the Public Records Act; and (c) if a public agency chooses to or is obligated to create an electronic record, the Public Records Act allows the agency to hire a third party vendor to create an electronic record from a public record that the agency does not possess electronically and/or from an electronic record that must be redacted and to charge the requestor the actual cost of creating an electronic record.

CP at 1. In her original answer, Ms. Zink sought PRA penalties against Benton County, but dropped that language in her second revised answer after she failed to pay the counterclaim filing fee. She subsequently told Benton County that she will "just file a motion for penalties if I win." CP at 162.

Benton County moved for summary judgment. Ms. Zink responded with a lack of standing argument in a combined memorandum in opposition to summary judgment and a motion to dismiss Benton County's declaratory action. In October 2014, the trial court denied Ms. Zink's motion to dismiss, granted Benton County's motion for summary judgment, and entered a declaratory judgment in favor of Benton County.

The trial court determined that there was no genuine issue of material fact as to the following:

1. There is an existing dispute between the parties regarding the County's authority and obligations under Washington's Public Records Act (PRA), and such dispute is not hypothetical and can be determined by a declaratory judgment issued by this Court.

2. A justiciable controversy exists, and this Court's jurisdiction under RCW 7.24 has properly been invoked.

3. No other parties are necessary or indispensable parties to this action.

4. There are no disputed facts material to the issue of whether Benton County is authorized under the PRA to have scanning services performed by a third party and charge Ms. Zink the actual reasonable cost thereof.

5. Benton County obtained quotes from three vendors as to the cost of scanning services, and a charge of 25 cents per page was the lowest quoted and is reasonable.

6. The Public Records Officer for the Benton County Prosecutor's Office does not have software on her computer to enable her to electronically redact any of the documents responsive to her request.

7. To provide Ms. Zink with electronic versions of responsive documents that it possesses in paper form only or that it possesses in electronic form that must be redacted, the Prosecutor's Public Records Officer would need to create additional public records.

CP at 217-18.

Consequently, the trial court entered the following declaratory judgment in favor

of Benton County:

1. Washington's Public Records Act (PRA), chapter 42.56 RCW, allows Benton County to hire a third party vendor to create electronic records from records it possesses only in paper form and from its electronic records that must be redacted and to charge Ms. Zink twenty-five cents per page or the actual cost, whichever is less, to have such electronic records created if she requests responsive documents be provided in electronic form.

6

      2. The PRA does not require that Benton County create or pay someone to create additional records that the County possesses in paper form only; and

      3. The PRA does not require that Benton County create or pay someone to create additional electronic records from records that the County possesses in electronic form, but that it appropriately redacts under the terms of the PRA.

CP at 220-21. Ms. Zink timely appealed the order granting Benton County's motion for summary judgment, the order denying her motion to dismiss, and the declaratory judgment itself.

## ANALYSIS

1.    *Whether Benton County has standing to seek a declaratory judgment*

Under the Uniform Declaratory Judgments Act, chapter 7.24 RCW (UDJA), "[a] person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity . . . and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. The UDJA "is to be liberally construed and administered." RCW 7.24.120. In order to decide an action for declaratory relief, a justiciable controversy must be present. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 410-11, 27 P.3d 1149 (2001). Because the trial court determined that Benton County had standing as a matter of law, we view the evidence bearing on this

7

issue in the light most favorable to Ms. Zink and the conclusions of law de novo.

*See id.* at 410 (this court applies "the customary principles of appellate review").

In order to have a justiciable controversy under the UDJA, the following elements are required:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties have genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Id.* at 411 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). "Inherent in these four requirements are the traditional limiting doctrines of standing, mootness, and ripeness, as well as the federal case-or-controversy requirement." *Id.* Specifically, the "direct, substantial interest" element "encompasses the doctrine of standing." *Id.* at 414.

Under the UDJA standing requirement, a party must (1) be within the zone of interests protected or regulated by a statute, and (2) have suffered an injury in fact. *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 186, 157 P.3d 847 (2007); *To-Ro Trade Shows*, 144 Wn.2d at 414 (quoting *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 493-94, 585 P.2d 71 (1978)). To put it most succinctly, "[t]he doctrine of standing

requires that a claimant must have a personal stake in the outcome of a case in order to bring suit." *Kleven v. City of Des Moines*, 111 Wn. App. 284, 290, 44 P.3d 887 (2002).

A stand alone statute is not needed under the UDJA so long as "'the interest sought to be protected . . . is arguably within the zone of interests to be protected *or regulated* by the statute.'" *To-Ro Trade Shows*, 144 Wn.2d at 414 (emphasis added) (internal quotation marks omitted) (quoting *Seattle Sch. Dist.*, 90 Wn.2d at 493); *see Nelson*, 160 Wn.2d at 187 ("Of course, no additional private right of action is necessary for parties to seek a declaratory judgment whenever their rights are affected by a statute."). If the party's interests are affected or impacted by a statute, the party is within the zone of interests. *See Nelson*, 160 Wn.2d at 187.

An important aim of the PRA is for each agency to provide "full public access to public records." RCW 42.56.100. This aim is accomplished by adoption and enforcement of reasonable rules, including rules to "prevent excessive interference with other essential functions of the agency." *Id.* The PRA thus recognizes that agencies should have limited protections when carrying out their duties, and are therefore within the zone of interests protected by the PRA. *See also* RCW 42.56.060 (disclaimer of agency liability for good faith release of public records).

Standing under the UDJA also requires injury in fact. *Nelson*, 160 Wn.2d at 186.

Washington courts have held that additional financial and administrative burdens imposed

on an agency constitute sufficient injury. *See Whatcom County v. State*, 99 Wn. App.

237, 241, 993 P.2d 273 (2000) (county had standing to seek declaration that the State was

obligated to defend a civil rights action because "if the State [did] not defend and

indemnify . . . the County [would] be forced to do so"). Seeking a declaratory judgment

under the PRA, "'spares the agency the uncertainty and cost of delay, including the per

diem penalties for wrongful withholding.'" *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716,

751, 174 P.3d 60 (2007) (quoting *Soter v. Cowles Publ'g Co.*, 131 Wn. App. 882, 907,

130 P.3d 840 (2006), *aff'd*, 162 Wn.2d 716).

Here, Benton County has standing to seek a declaratory judgment. Benton County

is within the zone of interests regulated by the PRA. Further, Benton County has a

personal stake in the outcome and has suffered an injury for declaratory judgment

purposes based on Ms. Zink's explicit threats to sue Benton County. Allowing Benton

County to seek a declaratory judgment that it has complied with the PRA "'spares the

agency the uncertainty and cost of delay, including the per diem penalties for wrongful

withholding.'" *Soter*, 162 Wn.2d at 751 (quoting *Soter*, 131 Wn. App. at 907). We hold

that the trial court properly denied Ms. Zink's argument that Benton County lacked standing to bring its action.

2.    *Whether the declaratory judgment properly determined the parties' rights*

The PRA is a "'strongly worded mandate for broad disclosure of public records.'" *Soter*, 162 Wn.2d at 731 (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). "The primary purpose of the PRA is to provide broad access to public records to ensure government accountability." *City of Lakewood v. Koenig*, 182 Wn.2d 87, 93, 343 P.3d 335 (2014); RCW 42.56.030 (the PRA must be "liberally construed and its exemptions narrowly construed" to ensure that the public's interest is protected). Consistent with RCW 42.56.100, agencies must adopt rules that "provide for the fullest assistance to inquirers," but still "prevent excessive interference with other essential functions of the agency." However, "administrative inconvenience or difficulty does not excuse strict compliance with the [PRA]." *Zink v. City of Mesa*, 140 Wn. App. 328, 337, 166 P.3d 738 (2007).

This court reviews the legality of agency actions under the PRA de novo. RCW 42.56.550(3); *Mitchell v. Dep't of Corr.*, 164 Wn. App. 597, 602, 277 P.3d 670 (2011). "While agencies have some discretion in establishing procedures for making public information available, the provision for de novo review confirms that courts owe

no deference to agency interpretations of the [PRA]." *Zink*, 140 Wn. App. at 335. When interpreting the PRA, this court "'look[s] at the act in its entirety in order to enforce the law's overall purpose.'" *Mitchell*, 164 Wn. App. at 603 (quoting *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 536, 199 P.3d 393 (2009)); *see Mechling v. City of Monroe*, 152 Wn. App. 830, 845, 222 P.3d 808 (2009) ([T]his court avoids any "unlikely, absurd, or strained result.").

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). An appellate court "may affirm summary judgment on any grounds supported by the record." *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d 881 (2011).

Ms. Zink argues that she presented genuine issues of material fact when she filed various discovery responses from the County. Specifically, the filed responses show that Benton County has the manpower and equipment to scan redacted paper copies and indeed has done so in the past. Ms. Zink however has not established that Benton County has done so in situations similar to her records request, where redacted paper copies potentially total several thousand pages.

a.      *There is no requirement to create a new record by scanning hard paper copies into electronic format*

"Nothing in the PRA obligates an agency to disclose records electronically." *Mitchell*, 164 Wn. App. at 606; *accord Mechling*, 152 Wn. App. at 849. Under the PRA "[a]n agency has no duty to create or produce a record that is nonexistent." *Sperr v. City of Spokane*, 123 Wn. App. 132, 136-37, 96 P.3d 1012 (2004). "Whether a particular public records request asks an agency to produce or create a record will likely often turn on the specific facts of the case and thus may not always be resolved at summary judgment." *Fisher Broad.-Seattle TV LLC v. City of Seattle*, 180 Wn.2d 515, 524, 326 P.3d 688 (2014).

In this situation, scanning a redacted paper copy of a record into electronic format on an agency's server *creates* a new public record. In *Mechling*, the court expressly rejected the argument that "as to properly redacted e-mails . . . the City has an obligation to scan the e-mails to create portable document format (PDF) or tagged image file format (TIFF) files." *Mechling*, 152 Wn. App. at 850. In the same vein, the court in *Mitchell* reasoned:

> The requested records are stored in a computer database and ostensibly include information that must be redacted. Requiring [the agency] to disclose these records electronically would force the agency to print the records, redact them, and then scan them back into electronic format. . . .

[W]e hold that such duplication of effort is outside of the agency's obligation of "fullest assistance"[3] [to inquirers] under the PRA.

*Mitchell*, 164 Wn. App. at 607. Under both *Mechling* and *Mitchell*, an agency is not required to *create* new public records by scanning properly redacted paper copies of records into an agency's server.

The trial court was presented with unrefuted evidence that scanning in redacted paper copies of electronic records in order to make electronic copies for Ms. Zink "would result in the creation of data about that electronic document and consume storage space on the server." CP at 128. Use of the outside vendor for scanning avoids creating a new public record on Benton County's server. Benton County is under no obligation to create new electronic records for Ms. Zink just because Ms. Zink believes it is more convenient for her and all other PRA requestors.

      b.    *Benton County may assess Ms. Zink the charge of the outside vendor for converting paper copies into electronic format*

Since the PRA allows a requestor to either inspect the records or request copies, a requestor may elect merely to inspect the records rather than bear the cost of copies. RCW 42.56.120. "A reasonable charge may be imposed for providing copies of public records[,] which charges shall not exceed the amount necessary to reimburse the agency

---

[3] *See* RCW 42.56.100.

14

. . . for its *actual costs* directly incident to such copying." RCW 42.56.120 (emphasis added). The Attorney General's model rule states, "[a]n agency can send the project to a commercial copying center and bill the requestor for the amount charged by the vendor." WAC 44-14-07001(5).

Ms. Zink chose to receive copies of the records as opposed to inspect the records in person. Benton County was under no obligation to create electronic records for Ms. Zink, but decided to accommodate her by having an outside vendor create the electronic copies on its own server for 25 cents per page. This was the actual cost Benton County incurred based on the lowest of three quotes from outside vendors. The PRA allows Benton County to charge Ms. Zink the actual costs it incurs for such a service.

Affirm.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____   _____
Siddoway, C.J.                       Fearing, J.

15