# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KURT NIMMERGUT and EILEEN
NIMMERGUT, husband and wife,

        Respondents,

        v.

EMERALD HILLS HOMEOWENERS'
ASSOCIATION, a Washington non-
profit corporation,

        Appellants.

) No. 75504-8-I
)
) DIVISION ONE
)
) UNPUBLISHED OPINION
)
)
)
)
) FILED: November 13, 2017

TRICKEY, A.C.J. — The Emerald Hills Homeowners' Association (the Association) appeals the trial court's order granting summary judgment in favor of Kurt and Eileen Nimmergut. The Association argues that the trial court erred because the Nimmerguts did not present a mature, justiciable controversy and that the Nimmerguts did not offer sufficient evidence to warrant summary judgment. Although the Nimmerguts have presented a mature, justiciable controversy, the height restriction covenant that encumbers the Nimmerguts' property is ambiguous and, therefore, the trial court erred in granting summary judgment because a question of fact remains regarding the drafters' intent. We reverse.

## FACTS

The development of Emerald Hills began in 1970. The Association took over responsibility for the development of Emerald Hills in 1977. All of the lots in Emerald Hills are subject to the Association's declaration of covenants, conditions, and restrictions (CCRs). The Association is responsible for enforcing the CCRs.

Article X, section 2 of the CCRs (the Height Covenant) states:

All lots herein not specifically noted shall have no height restrictions except those common to the City of Edmonds standard building code and restrictions. The following Lots shall have height restrictions as follows: the roof ridge line or any part of the house, garage or other permitted building, except the chimney or fireplace top thereof, shall not extend above the stated height limit. All measurements shall be made from the top of the concrete street curb at the location noted for each Lot.[1]

The Height Covenant lists several groups of lots with specific maximum heights and points from which the maximum height is measured. The original developer told the Association that he intended the Height Covenant to mean "that [the] height should be measured at the center of the curb line running along the property."[2]

A party who wants to construct a "building, fence, wall or other structure" must submit plans to the Association's board of trustees or an appointed architectural committee for approval.[3] The board of trustees or architectural committee reviews the plan for "harmony of external design and location in relation to surrounding structures and topography."[4] Plans approved by the board of trustees or architectural committee are given to the city of Edmonds (the City) to obtain a permit.

In 2011, the Nimmerguts purchased the undeveloped Lot 23 of Emerald Hills. They discussed building a house on Lot 23 with Darrol Haug, the treasurer of the Association. Haug provided the Nimmerguts with a copy of the CCRs, which showed that Lot 23 is subject to the Height Covenant.

Under the Height Covenant, structures built on Lot 23 are restricted to "27 feet

---

[1] Clerk's Papers (CP) at 124.
[2] CP at 112.
[3] CP at 121.
[4] CP at 121.

2

maximum height as facing west on 12th Avenue West."[5] The provisions of the Height Covenant burdening other lots specify the point of the curb from which the height is measured, but the provision governing Lot 23 does not.[6]

The Association and the Nimmerguts agreed that the Nimmerguts could use the average height between the highest point of the property's frontage and its center point as the point from which to measure the maximum height. The Nimmerguts also sought to amend the Height Covenant, but were unable to gather the necessary votes of other homeowners.

The Nimmerguts submitted a plan to build a house whose maximum height was calculated from the point they had agreed on with the Association. On November 6, 2012, the board of trustees approved the plans. The City reviewed the plans, but the Nimmerguts allowed the plans to expire on January 15, 2014.

In October 2014, the Nimmerguts retained legal counsel, who concluded that the height restriction allowed the Nimmerguts to calculate the maximum height of a structure from any point on the property's frontage. The difference between the agreed-upon point and the maximum possible height would be 2.95 feet. The Nimmerguts asked the Association to approve their method of calculating the height limitation for Lot 23 under the CCRs.

The Association rejected the Nimmerguts' interpretation.[7] The Association argued

---

[5] CP at 125.

[6] For example, "Lot 12 – 17 feet maximum height from 135 feet south of the northern most corner facing east on Highland Drive;" "Lot 36 – 16 feet maximum height from center of Lot facing on Emerald Hills Drive." CP at 124-25.

[7] A land survey prepared on behalf of the Nimmerguts showed that three of the four other lots had houses whose maximum height exceeded the alleged height restriction based on the average curb height. A land survey prepared on behalf of the Association produced similar results. At the Nimmerguts' request, the Association produced a letter from 1988 that told the owners of Lot 20

that the houses on the four other lots subject to the particular Height Covenant provision that applied to Lot 23 all had maximum heights calculated based on the average curb height.

In October 2015, the Nimmerguts filed a complaint seeking a declaratory judgment that their interpretation of the CCRs was correct. In March 2016, the Nimmerguts moved for summary judgment and a declaratory judgment. The trial court granted the Nimmerguts' motion, stating that the "plain reading of the height restriction applicable to the Nimmergut's [sic] Lot 23 permits the Nimmerguts to measure 27 feet from any point where Lot 23 faces 12th Avenue West, including the top of the concrete curb at the southerly point where lot 23 faces 12th Avenue West."[8] The trial court found that the Association's interpretation improperly added terms to the CCRs. The trial court also granted the Nimmerguts' motion to strike hearsay from a declaration offered by the Association to show the intent of the drafters of the CCRs.

The Association appeals.

## ANALYSIS

### Mature, Justiciable Controversy

The Association argues that the trial court erred in issuing a declaratory judgment because the Nimmerguts have not presented a mature, justiciable controversy. We disagree.

The Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, states:

> A person interested under a . . . written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a . . . contract . . ., may have determined any question of construction or

---

that the maximum allowable height for the lot was 27 feet from the top of the curb at the centerline of the lot.
[8] CP at 6.

validity . . . and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020. The UDJA "is to be liberally construed and administered." RCW 7.24.120.

To have standing under the UDJA, a party must show that the dispute meets the following elements:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

Benton County v. Zink, 191 Wn. App. 269, 278, 361 P.3d 801 (2015) (alteration in original) (internal quotation marks omitted) (quoting To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)), review denied, 185 Wn.2d 1021, 369 P.3d 501 (2016).

"The issuance of a declaratory judgment is discretionary." Bloome v. Haverly, 154 Wn. App. 129, 146, 225 P.3d 330 (2010). A trial court's decision to consider or refuse to consider a motion for declaratory judgment is reviewed for abuse of discretion. Nollette v. Christianson, 115 Wn.2d 594, 599, 800 P.2d 359 (1990).

Here, the dispute is justiciable under the UDJA. First, since becoming aware of the Height Covenant, the Nimmerguts have made significant efforts to have their interpretation of the CCRs adopted. The Association and the other homeowners have rejected these efforts. The Association has told the Nimmerguts that it would not approve of "any height limitation for Lot 23 higher than 27 feet above the average for the lot at the curb, as measured from 12th Ave. N. [sic]"[9] The Association's stated position clearly

---

[9] CP at 212 (emphasis omitted).

indicates that it would summarily reject any plans submitted by the Nimmerguts that do not conform with the Association's interpretation. Thus, the facts present an actual, present, and existing dispute, or the mature seeds of one.

Second, the parties have genuine and opposing interests. The Association's interpretation limits the Nimmerguts to a height of 27 feet as measured from the average curb height. The Nimmerguts' interpretation would permit them to calculate the maximum allowable height as 27 feet above the highest point on the curb. These two interpretations oppose one another, and each party's efforts to enforce its own interpretation indicates that the interests are genuine.

Third, the interests at issue are direct and substantial. The Nimmerguts plan to build a home on Lot 23. The Height Covenant limits the height of any home that the Nimmerguts build. The Nimmerguts' interpretation of the Height Covenant allows 2.95 additional feet of height relative to the Association's interpretation. Therefore, the parties' interests in the determination of which interpretation is correct is direct and substantial.

Fourth, a judicial determination of the correct interpretation of the Height Covenant would be final and conclusive. The issue presented in the Nimmerguts' motion for summary judgment and a declaratory judgment is the correct interpretation of the Height Covenant. A judicial determination of the meaning of the provision would finally and conclusively resolve this issue.

Relying on Bloome v. Haverly, the Association argues that the Nimmerguts cannot establish standing for a declaratory judgment because they have not submitted building plans that would violate the Association's interpretation of the Height Covenant. 154 Wn. App. 129, 225 P.3d 330 (2010). In Bloome, two homeowners sought a declaratory

judgment interpreting a "view covenant" that restricted a downhill parcel's right to interfere with "'the existing view corridor for [an] [uphill parcel.]'" 154 Wn. App. at 133 (second alteration in original). The Court of Appeals held that the parties were not entitled to a declaratory judgment because "[i]n the absence of a dispute over whether actual building plans satisfy the covenant or of other evidence establishing a necessary minimum degree of interference with the view of the uphill property," a declaratory judgment would not conclusively resolve the dispute. Bloome, 154 Wn. App. at 142.[10]

Bloome is distinguishable from the present case. In Bloome, the view covenant at issue did not provide the parties with measureable standards that could be litigated before the parties submitted actual plans that could be evaluated in light of the covenant. 154 Wn. App. at 145 (contrasting case from past cases that had found that issuance of a declaratory judgment was proper).

Here, the Nimmerguts do not need to actually submit building plans or construct a home that conforms to their interpretation of the Height Covenant for a justiciable controversy to exist. The parties have discussed extensively the proper point from which the 27-foot maximum height should be calculated. The Association has made it clear to the Nimmerguts that it would not approve of a plan that calculated the maximum height from the highest point of the curb. Thus, the record contains sufficient facts over which the parties may litigate.

---

[10] The Court of Appeals noted that "Haverly has not shown that it is possible to develop the downhill parcel without interfering, to at least some degree, with the view from the uphill parcel." Bloome, 154 Wn. App. at 141. The court concluded that Haverly's interpretation of the covenant was too expansive and violated established principles of the free use of land. Bloome, 154 Wn. App. at 143. But "Bloome effectively [sought] a declaration that the covenant does not, *in any way*, restrict the development rights of the owner of the estate in the downhill parcel." Bloome, 154 Wn. App. at 143. The court concluded that Bloome's interpretation of the covenant was too broad and would violate the covenant's express purpose. Bloome, 154 Wn. App. at 143.

7

In sum, the Nimmerguts have satisfied each element of standing under the UDJA, and the trial court did not abuse its discretion when it considered the Nimmerguts' motion for a declaratory judgment.[11]

## Summary Judgment

The Association argues that the trial court erred in granting summary judgment in favor of the Nimmerguts because there were unresolved genuine issues of material fact. We agree.

Summary judgment shall be granted if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

This court's "primary task in interpreting a restrictive covenant is to determine the covenant drafters' intent by examining the clear and unambiguous language of the covenant." Saunders v. Meyers, 175 Wn. App. 427, 438-39, 306 P.3d 978 (2013). If the covenant is unclear, the court may look to extrinsic evidence and the surrounding circumstances to discern the intent of the covenant. Hollis v. Garwall, Inc., 137 Wn.2d 683, 695, 974 P.2d 836 (1999); Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wn.2d 337, 344, 883 P.2d 1383 (1994).

---

[11] In its reply brief, the Association points out that the Nimmerguts erected poles on Lot 23 to "give surrounding homeowners and the Association a sense of the impact of a home built to 'maximum height,'" and "the impacts to the views of existing surrounding homes would have ranged from meaningful to quite significant." Appellant Emerald Hills Homeowners Ass'n Reply Br. at 5. This fact supports the Nimmerguts' argument that the record is sufficient for the parties to litigate over whether the Nimmerguts' interpretation would violate the Height Covenant.

A trial court's summary judgment ruling is reviewed de novo. Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011). Interpretation of a restrictive covenant is a question of law reviewed de novo. Bauman v. Turpen, 139 Wn. App. 78, 86, 160 P.3d 1050 (2007). The intent of the drafter of a covenant is a question of fact. Ross v. Bennett, 148 Wn. App. 40, 49, 203 P.3d 383 (2008).

Here, the Height Covenant directs that "[a]ll measurements shall be made from the top of the concrete street curb at the location noted for each Lot."[12] The relevant provision of the Height Covenant states, "Lot 19 through 23 – 27 feet maximum height as facing west on 12th Avenue West."[13] The language of these provisions is not sufficiently clear or unambiguous to determine the drafters' intent. The first clause specifies that the measurement must be made from a particular location for each lot, but the relevant Height Covenant provision does not have any such location. It states only the orientation from which a measurement should be taken. In contrast, other Height Covenant provisions clearly state a point from which the maximum height must be measured. Taken together, the plain language of the Height Covenant is ambiguous because it fails to provide a particular point from which a measurement can be taken.

Because the language of the Height Covenant is ambiguous, a question of fact remains regarding the drafters' intent that precludes summary judgment. Thus, we conclude that the trial court erred by granting summary judgment in favor of the Nimmerguts.[14] On remand, the parties may present arguments regarding the applicability

---

[12] CP at 124.
[13] CP at 125.
[14] The Association also argued that the trial court erred because the Nimmerguts' interpretation of the Height Covenant conflicted with the expressed purpose of the Height Covenant's purpose and the homeowners' collective interest, and because the trial court failed to rule on the Association's equitable estoppel defense prior to issuing its declaratory judgment. Because we

9

of other provisions of the CCRs to the interpretation of the Height Covenant and the admissibility of extrinsic evidence on the issue of the drafters' intent.

Reversed and remanded.

Trickey, A.C.J.

WE CONCUR:

Dwyer, J.

Appelwick, J.

---

conclude that there is a genuine issue of material fact concerning the proper interpretation of the Height Covenant that precludes summary judgment, we do not reach these issues. The parties may address them at trial.