IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| YAKIMA SCHOOL DISTRICT NO. 7, | ) | No. 37505-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANDREW L. MAGEE, an individual, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Andrew Magee appeals the trial court's ruling that the records he sought from Yakima School District No. 7 (YSD) were exempt under the Washington Public Records Act (PRA), chapter 42.56 RCW. We affirm and impose sanctions.

FACTS

On November 27, 2018, Andrew Magee, an attorney, filed a public records request with YSD. The request, made pursuant to the PRA, read as follows:

> I am requesting an opportunity to inspect or obtain copies of absolutely any/all public records/recordings/video tapes, or records of any kind whatsoever associated with or related to the and/or any/all drug testing program(s) imposed upon and/or any other prospective and/or employee of YSD, and that/those made upon such persons—to include/but not limited to—in conjunction with Yakima Worker Care.

Clerk's Papers (CP) at 49. YSD responded the next day, indicating it would provide Magee with responsive records on an installment basis. The letter stated, "The District's initial estimate is that records, if existing and not exempt, may be available as soon as 02/28/19." CP at 54. The letter went on: "[W]e invite you to narrow the request or to prioritize particular items in the request, though you are not required to do so. We will make every reasonable effort to respond as promptly as possible to your request." CP at 54. The final paragraph noted that the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, prevents school districts from disclosing personal identifying information without consent.

On December 5, Magee sent YSD's records coordinator an e-mail that read, in part:

> It is our position that your response is wholly insufficient and not in compliance with the law, and, as I believe was mentioned, will be the basis for taking legal action seeking sanctions imposed for your/YSD's lack of response in providing access to the documents described. On the other hand, and while narrowing our request in no-way-shape-or-form in any way whatsoever, I have attached a copy of a form that is used, that among others, is that which we request access to in the capacity described in our

> request, that is to say, but not limited to, we need to be provided access to these documents (the "Acknowledgmenet [sic] and Understanding of Drug Screen and/or Physical Process forms) for the entirety of their use (and/or any other form) related, but not limited to, the drug testing program indicated therein. . . . I, or another person from my office will be available to come to the YSD office [any day but Wednesday the week of December 10]. Will you please confirm . . . so that I may make the necessary arrangements to be there to inspect the documents and so that we may avoid any further unnecessary/unlawful delay and action taken accordingly.

CP at 56-57. YSD responded on December 7: "Due to a high volume of public records requests and many that came in prior to yours, the Yakima School District is unable to meet your requested timeframe. We will do our best to process your request as quickly as possible." CP at 56.

On January 29, 2019, YSD e-mailed Magee with attached records it considered responsive to Magee's request. The e-mail requested confirmation that the records were those Magee sought.

On February 3, Magee e-mailed YSD to clarify which records he sought. The e-mail read, in part:

> As I understand it, when a person is processed to become an employee, they are given a form with their named filled out on it—the same form I sent to you and the same form you sent back to me (in other words, what has happened already and accomplished nothing towards my request.) What I am requesting and have already requested is to review the copy of every single person's form that was subjected to this drug testing program that documents (a) that they were subject to the test, and; (b) any disposition,

3

> (or not) taken against any persons whatsoever who has been subject to this test.

CP at 67.

YSD understood Magee's request to encompass two specific records: a form, completed by all applicants for employment with YSD, entitled "Acknowledgment and Understanding of Drug Screen and/or Physical," and records containing results of preemployment drug screening. CP at 61. YSD's counsel described those records as "HIPAA [Health Insurance Portability and Accountability Act of 1996] files" that contain confidential information on YSD employees and applicants.

On February 15, YSD informed Magee that the first installment of records was ready for his inspection. The e-mail explained the time it takes to review personnel files meant records had to be released in installments. On March 1, YSD followed up to tell Magee that the records would be divided into 33 installments. On March 5, Magee inspected the first installment and made copies of several hundred pages.

On April 11, YSD sent Magee a letter informing him that the requested records were "exempt from production in their entirety pursuant to RCW 42.56.250(2)." CP at 90. That exemption applies to employment applications, including materials submitted with respect to an applicant. The records sought "were prepared by applicants for employment with the district as part of the employment application process. It is fair

to categorize drug screening results as containing sensitive personal information of applicants for employment." CP at 90. The letter requested Magee to let YSD know if he disagreed with its position and, if so, the basis for his disagreement. Magee did not respond.

On April 19, Magee inspected the second installment of records and made copies of several hundred pages. On May 7, YSD sent another letter to Magee reiterating its position that the records he sought were exempt. YSD again asked Magee if he disagreed and to respond with the basis for his disagreement. The letter also stated, "While it is YSD's intention to continue to provide you with installments of responsive records, YSD may also pursue a declaratory ruling from the Yakima County Superior Court as to whether these records may be withheld in their entirety." CP at 102. Magee did not respond.

On June 4, YSD sent another follow-up letter asking for Magee's position on the exemption and informing him of a potential declaratory ruling. Magee still did not respond.

### *Trial court proceedings*

On July 18, 2019, YSD filed a complaint for declaratory relief in the Yakima County Superior Court. YSD requested that the court rule the records

Magee sought from YSD were exempt from disclosure pursuant to

RCW 42.56.250(2). Magee answered, admitting most of the factual allegations

but asserting that YSD was not entitled to relief because its complaint was

"improper, untimely, waived, and failing to state a claim for which relief may be

granted." CP at 11.

On August 28, YSD filed a motion for declaratory ruling and summary judgment.

Magee opposed the motion for several reasons.[1] He challenged YSD's standing and

argued YSD had waived any right to seek relief by releasing some of the records.

Magee also included a section entitled, "COUNTER-MOTION FOR SUMMARY

JUDGMENT," which reiterated the reasons he opposed YSD's motion. CP at 140.

Magee did not request a hearing for his countermotion.

On October 23, the trial court conducted a hearing on YSD's motion. The court

found that the records sought were part of an application for public employment and

were, therefore, exempt under the PRA. On November 22, the trial court entered its

written order, which read in part:

---

[1] Magee also challenged the trial court's jurisdiction, both subject matter and personal, CP 126-44, and argued YSD committed security breaches of personal information by releasing records. Those issues are not on appeal.

> An actual, present and existing dispute exists between plaintiff YSD and defendant Andrew Magee as to whether the following pre-employment drug screening records may be withheld in their entirety. . . . The interests of plaintiff YSD and defendant Magee with respect to this issue are genuine, direct, substantial and opposite. Defendant Magee has threatened litigation against YSD. A judicial determination whether the PRA authorizes the pre-employment drug screening records at issue to be withheld in their entirety or produced with redactions will be final and conclusive with respect to the present dispute between the parties as to these records.

CP at 208-09. Finding no genuine issue of material fact precluding summary judgment in YSD's favor, the court granted the motion and ruled YSD could withhold the records pursuant to RCW 42.56.250(2). The court did not rule on Magee's motions.

Magee filed a notice of direct appeal to the Washington Supreme Court. The Supreme Court transferred the appeal to this court.

ANALYSIS

RAP 10.3 VIOLATIONS

YSD contends Magee's opening brief violates RAP 10.3 in several ways and asks this court to strike it in its entirety. We agree Magee's brief violates RAP 10.3, but we decline to strike it and instead impose sanctions.

The Rules of Appellate Procedure "enable the court and opposing counsel efficiently and expeditiously to review the accuracy of the factual statements made in the briefs and efficiently and expeditiously to review the relevant legal authority." *Litho*

*Color, Inc. v. Pac. Emp'rs Ins. Co.*, 98 Wn. App. 286, 305-06, 991 P.2d 638 (1999). The court, on its own initiative or motion of a party, may order a brief that fails to comply with Title 10 returned and corrected, struck and replaced, or it may accept the brief. RAP 10.7. In addition, the court will ordinarily impose sanctions on a party or counsel who files an improper brief. RAP 10.7.

We address each alleged violation below.

*RAP 10.3(a)(3): Introduction*

YSD first argues Magee improperly included a preamble to his brief and further failed to follow the rules outlined in RAP 10.3(a)(3) in his introduction. An appellant's brief may include an optional concise introduction, which need not contain citations to the record or authority. RAP 10.3(a)(3). No provision in the RAP mentions a preamble, and we agree that it was improper to include. Not only is it impermissible for formatting reasons, Magee's "preamble" is a confusing jumble of words referencing the procedural posture of the case, standards of review, and a request for attorney fees and oral argument. It does not help the court or opposing counsel "expeditiously review" the issues in the case.

The remainder of Magee's introduction also violates RAP 10.3(a)(3). The introduction, far from concise, is nine pages long. It contains numerous forceful and frankly unprofessional arguments against YSD and is distractingly peppered with citations and parenthetical comments. Much of this language appears again in the statement of the case, which we turn to now.

### *Rule 10.3(a)(5): Statement of the case*

The statement of the case is defined as: "A fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement." RAP 10.3(a)(5).

Magee's statement of the case is entitled "Frivolous Lawsuit/Action" and reads in part: "In a scurrilous attempt to escape that truth and legal responsibility to the victims of its wrongdoings, from whole cloth, YSD fabricated and brought a frivolous/vexing/ annoying, and without a basis in law or fact, lawsuit against Mr. Magee!" Br. of Appellant at 15.

Magee continues with similar prose:

> Instead of confessing their sins(s), and taking responsibility for their wrongdoing, YSD sought to attempt recruiting a court of law to provide YSD with a declaratory order that only could at best, *pretend* to shield/cover-up YSD/the State, from their legal responsibilities/liabilities (which remain in existence) by conjuring-up an otherwise

> frivolous/vexing/annoying/scurrilous *lawsuit* with no basis in fact or
> law . . . .[2]

Br. of Appellant at 17.

In contrast, Magee says he has acted with "an overt abundance of caution/professional and ethical practice . . . ." Br. of Appellant at 15-16. This section is not "[a] fair statement of the facts . . . without argument" and does little to introduce the actual issues on appeal. Finally, many assertions of fact are not supported by citations to the record. This makes it difficult for us to verify the accuracy of Magee's many assertions.

Addressing YSD's request that we strike his brief, Magee replies, "RAP 10.3(a) does not outline the sections of an appellate brief that are <u>required</u> to include, but rather, those that 'should.'" Reply Br. of Appellant at 22 (emphasis in original). He then cites RAP 1.2(b), apparently without reading it. The rule provides: "Unless the context of the rule indicates otherwise: 'Should' is used when referring to an act a party or counsel for a party is *under an obligation to perform*. The court will ordinarily impose sanctions if the act is not done within the time or in the manner specified." RAP 1.2(b) (emphasis

---

[2] We note that Magee does not challenge the applicability of the exemption on appeal.

10

added).  In this context, "should" means "shall."  Magee's argument that he was not

*required* to follow RAP 10.3(a) fails.

We agree with YSD that Magee's statement of the case violates RAP 10.3(a)(5)

and is wholly unhelpful to the court or opposing counsel.  We nevertheless decline to

strike his brief.  Instead, we impose sanctions of $1,000 against Magee, with one-half

payable to this court and the other half payable to YSD.  Magee's violations required this

court, and we presume YSD also, to spend unnecessary time determining what arguments

to address and how to best address them.  Payment of these sanctions must be made

within 20 days of the filing of this opinion, with verification of compliance filed with this

court.

STANDING

Magee contends YSD lacked standing to seek declaratory relief from the trial

court.  Because the court determined YSD had standing at the summary judgment stage,

we view the evidence on this issue in the light most favorable to Magee and review the

trial court's conclusions of law de novo.  *Benton County v. Zink*, 191 Wn. App. 269, 277-

78, 361 P.3d 801 (2015).

The Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, provides, "[a] person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity . . . and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. A justiciable controversy must exist before a trial court may grant declaratory relief under the UDJA. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001). A justiciable controversy requires

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Zink*, 191 Wn. App. at 278 (internal quotation marks omitted) (quoting *To-Ro Trade Shows*, 144 Wn.2d at 411).

"Th[e] third justiciability requirement of a direct, substantial interest in the dispute encompasses the doctrine of standing." *To-Ro Trade Shows*, 144 Wn.2d at 414; *see also Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 203, 11 P.3d 762, 27 P.3d 608 (2000) ("[U]nder the Uniform Declaratory Judgments Act, the requirement of standing tends to overlap justiciability requirements."). Our Supreme Court has established a two-prong standing test for purposes of the UDJA. *Wash. State Hous. Fin. Comm'n v. Nat'l*

12

*Homebuyers Fund, Inc.*, 193 Wn.2d 704, 711, 445 P.3d 533 (2019). First, we ask

whether the party is within the "zone of interests" protected or regulated by the statute,

and if so, whether the challenged action has caused an "injury in fact." *Id.* at 711-12.

The UDJA is to be liberally construed, and the test for standing "is not intended to be a

particularly high bar." *Id.* at 712. "Instead, the doctrine serves to prevent a litigant from

raising another's legal right." *Id.*

We first determine whether YSD falls into the "zone of interests" of the PRA.

"The PRA requires state and local agencies to produce all public records upon request,

unless the record falls within a PRA exemption or other statutory exemption."

*Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 407, 259 P.3d 190

(2011). The PRA aims "to provide full public access to public records, to protect public

records from damage or disorganization, and to prevent excessive interference with other

essential functions of the agency . . . ." RCW 42.56.100. The statute balances the need

for public access while providing some protection to state agencies; thus, the school

district falls within the zone of interests. *See Zink*, 191 Wn. App. at 279.

We next determine whether Magee's PRA request caused an injury in fact to YSD.

An agency that withholds nonexempt records does so at great peril of paying penalties.

*Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 751, 174 P.3d 60 (2007) (plurality opinion).

On the other hand, an agency that releases exempt employee records exposes itself to potential liability. YSD, by seeking clarification of its duties under the PRA, was not asserting the rights of some third party. Rather, it was protecting its own financial interests.

Magee argues, or rather asks and answers in a parenthetical query, that YSD cannot bring suit against him, the PRA requester. He reads chapter 42.56 RCW as authorizing only requesters—not agencies—to initiate actions and seek judicial review. His position is incorrect. Washington courts have long held public agencies have standing to seek judicial review of the applicability of the PRA to specific records. *Soter v. Cowles Publ'g Co.*, 131 Wn. App. 882, 907, 130 P.3d 840 (2006), *aff'd*, 162 Wn.2d 716 (2007). "[I]t is clear that either agencies or persons named in the record may seek a determination from the superior court as to whether an exemption applies . . . ." *Soter*, 162 Wn.2d at 752. Accordingly, Magee's argument is contrary to precedent.

We conclude the trial court correctly determined that YSD had standing to pursue its declaratory judgment action.

WAIVER

Magee argues YSD waived its right to claim exemptions under the PRA by releasing the first three installments of the responsive records. We disagree.

14

We review summary judgment orders de novo, viewing the evidence in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Here, that party is Magee. The trial court correctly rejected his waiver argument.

"The PRA itself does not provide for waiver of a claimed exemption." *Bainbridge Island Police Guild*, 172 Wn.2d at 409. As such, we analyze Magee's claim under the common law doctrine of waiver:

> A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement or be inferred from circumstances indicating an intent to waive. . . . The one against whom waiver is claimed must have actual or constructive knowledge of the existence of the right. He must intend to relinquish such right . . . and his actions must be inconsistent with any other intention than to waive them.

*Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954).

YSD's initial response to the records request mentioned that the documents might be exempt but did not properly identify the exemption on which it was relying. We agree that YSD should have more promptly identified the exemption. But its failure, in large part, was attributable to the scope of Magee's PRA request that remained unclear until early February 2019.

15

Beginning on April 11, 2019, YSD asserted that the records were exempt under RCW 42.56.250(2). In response to Magee's threats of litigation, YSD released the records until the parties could come to an agreement or seek a judicial determination on the issue. These circumstances do not support an inference that YSD intended to waive its right to assert the exemption. Although YSD released records to avoid potential penalties, it did so in a manner that expressly preserved its intent to assert the exemption, not waive it.

Magee relies on *Bainbridge Island Police Guild* to support his argument that YSD waived its right to claim exemptions. 172 Wn.2d 398. There, reporters sought two records of an officer's alleged assault. *Id.* at 404-05. One of the records was released to the reporters, while the other would later be released "absent an injunction." *Id.* at 405. The officer then sought an injunction to prevent release of the second record. *Id.* The court found all the records exempt under the PRA. *Id.* Two new requesters then sought the records previously released to the reporters. *Id.* at 406. The officer again moved to enjoin production, but a different county's superior court denied the motion. *Id.* That court later ruled the record fell under a PRA exemption and ordered the requesters to return it. *Id.* On direct appeal, the requesters argued the officer's failure to bring suit

against the first requesters constituted waiver of his right to claim an exemption under the PRA. *Id.* at 409.

Our Supreme Court held the officer did not waive his right to claim a PRA exemption despite failing to object to the initial request. *Id.* at 409-10. It reasoned: "Neither [PRA exemption] expressly requires a person to object to every single public records request that might occur in order to preserve the exemption for future requests." *Id.* at 409. And, the officer's actions were inconsistent with an intentional and voluntary relinquishment of his right, so common law waiver did not apply. *Id.* at 410. The court concluded: "The failure to object to a single public records request is only a relinquishment of the right to prevent that specific production." *Id.*

Contrary to Magee's interpretation, we read *Bainbridge* as supporting YSD's position. That is, YSD's production of three installments of records did not waive its right to later rely on an exemption. Moreover, YSD's election to avoid per diem penalties by producing the first three batches of records and trying to work cooperatively with Magee are not acts wholly inconsistent with its later intent to assert the exemption.[3]

---

[3] Magee additionally relies on *Gipson v. Snohomish County*, 194 Wn.2d 365, 449 P.3d 1055 (2019), to support his argument that YSD waived its right to assert an exemption. *Gipson* does not discuss the doctrine of waiver and is inapplicable.

No. 37505-6-III
*Yakima Sch. Dist. No. 7 v. Magee*

We conclude the trial court correctly determined that YSD did not waive its right to claim a PRA exemption.

Affirmed with sanctions imposed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Siddoway, A.C.J.                    Staab, J.

18