IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SPENCER ALPERT, a single man, | ) | |
| | ) | No. 79747-6-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CAL-WESTERN RECONVEYANCE | ) | |
| CORPORATION OF WASHINGTON; | ) | |
| RESIDENTIAL FUNDING COMPANY; | ) | |
| CHICAGO TITLE; CHASE HOME | ) | |
| FINANCE, LLC; HOMECOMINGS | ) | |
| FINANCIAL NETWORK, INC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AURORA LOAN SERVICES, LLC; | ) | |
| U.S. BANK NATIONAL ASSOCIATION | ) | |
| as Trustee for Lehman XS Trust | ) | |
| Mortgage Pass-Through Certificates, | ) | |
| Series 2006-18N; MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC. "MERS"; MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEM as Nominee for | ) | |
| HOMECOMINGS FINANCIAL | ) | |
| NETWORK, INC.; and ALICE L. | ) | |
| ALPERT, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

SMITH, J. — In 2010, Spencer Alpert filed suit against various defendants

to forestall an impending foreclosure sale initiated by Aurora Loan Services LLC

Citations and pin cites are based on the Westlaw online version of the cited material.

(Aurora), the purported beneficiary of the subject deed of trust.  In 2011, the trial court entered orders dismissing Alpert's claims against Aurora, Mortgage Electronic Registration Systems Inc. (MERS), and U.S. Bank National Association as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-18N (U.S. Bank).  Alpert appealed those orders in 2012, but we dismissed Alpert's appeal as premature.

In 2019, the trial court entered a stipulated order dismissing the only remaining defendant in Alpert's lawsuit.  Now Alpert again appeals the 2011 orders dismissing Aurora, MERS, and U.S. Bank.

We hold that Alpert's appeal of the 2011 orders is timely.  We also hold that because genuine issues of material fact remain as to whether Aurora had standing to initiate a foreclosure sale, the trial court erred by dismissing Alpert's claim for declaratory relief as to Aurora's standing to foreclose.  We remand to the trial court for further proceedings with regard to that claim.  Otherwise, we affirm.

FACTS

In August 2006, Alpert obtained a loan from Homecomings Financial Network Inc. (Homecomings) to purchase a home located at 10218 Richwood Avenue NW in Seattle (Property).  In connection with the loan, Alpert signed an adjustable rate note, dated August 28, 2006 (Note), documenting his "promise to pay U.S. $723,750.00 . . . , plus interest," to the order of Homecomings.  Alpert's payment obligation was secured by a deed of trust on the Property.  The original beneficiary under the deed of trust was MERS, and the original trustee was

Chicago Title.

In July 2010, Alpert received a notice of default identifying Aurora as the owner of the Note and the beneficiary under the deed of trust. The notice declared Alpert in default for "[f]ailure to pay the monthly payment due February 1, 2010 . . . and subsequent installments due thereafter." The notice of default was followed by a notice of trustee's sale, dated August 5, 2010, stating that Cal-Western Reconveyance Corporation of Washington (Cal-Western), as trustee, would sell the Property on November 19, 2010.

Before the scheduled trustee's sale, on October 19, 2010, Alpert filed a complaint against Cal-Western, as well as a motion to enjoin the foreclosure sale. In his complaint, Alpert alleged that he had "repeatedly requested proof of [Cal-Western]'s standing to foreclose on [his] residence" and that Cal-Western had "failed to provide such information . . . despite these repeated requests." Alpert prayed for "declaratory relief in regard to [Cal-Western]'s standing in the matter of the scheduled Trustee's Sale in the form of a preliminary injunction prohibiting the Trustee's Sale scheduled for November 19, 2010."

In an accompanying declaration filed the same day, Alpert attested that around February 2010, he "attempted to contact the Lender to discuss options in regard to [his] home, and . . . was informed that in order to have more productive discussions, [he] needed to stop making loan payments." He further declared that after receiving the notice of default in July 2010, he spoke by telephone with Angela Leyra, Cal-Western's representative whose name and contact information appeared on the notice of default. Alpert "indicated to her [he] believed there

3

were irregularities concerning [his] loan, and [Leyra] promised to pass along [Alpert's] desire to further investigate the matter and to hopefully resolve and keep [his] home." According to Alpert, Leyra "specifically represented and promised that NO ACTION would be taken, and particularly that no foreclosure action would be filed, until we had further discussion," but "[t]hat turned out not to be true." Alpert declared that since that time, he had called Leyra multiple times and had written both to Leyra, to another Cal-Western representative whose name appeared on the notice of trustee's sale, and to Aurora, but none of them had responded with the information he requested. He declared that, in particular, he "asked [Cal-Western] in the form of both a request and a demand, that they send me proof of ownership of the original Note . . . , and . . . to supply assignments from Homecomings." Attached to Alpert's declaration was a copy of the Note that Alpert later declared was the version filed with the notice of trustee's sale. That copy was indorsed in blank by Homecomings:

Without Recourse
Pay to the Order of

*Melissa Windler*
Melissa Windler
Assistant Secretary
Homecomings Financial Network, Inc.
A Delaware Corporation

A day after filing his complaint, motion to enjoin the foreclosure, and declaration, Alpert filed an amended complaint in which he added a request for attorney fees and costs (first amended complaint). He also filed a supplemental declaration. In that declaration, Alpert stated that after he filed his case, he

"received a partial response" from Aurora identifying U.S. Bank as the "'owner'" of Alpert's loan.  Alpert declared that before receiving this response, he "had never heard of U.S. Bank" and that although he had "thoroughly scoured and reviewed all documents relating to this foreclosure," U.S. Bank's name "appears nowhere, nor is there any indication that the Note was ever assigned to anyone by the original noteholder."  Alpert also declared that included with the correspondence from Aurora was another copy of the Note containing a different indorsement than the one filed with the notice of trustee's sale.  Specifically, the second copy was indorsed to an entity identified as Residential Funding Corporation:

According to Alpert, "there [was] no indication of who is Residential Funding Corporation and how they fit in the picture, and what would be their rights were the endorsement to be deemed valid."  He also asserted that "this is a clear indication of fraud and conspiracy on the part of [Cal-Western] and Aurora . . . , because they have now claimed two different Notes as the original, and have used each to promote their objective of having the property sold at foreclosure sale regardless of standing."

In its response to Alpert's motion to enjoin the foreclosure sale, Cal-

Western observed that Alpert's complaint was subject to dismissal for failure to join the beneficiary of the deed of trust as an indispensable party. Cal-Western also argued that Alpert had not met the requirements to obtain a preliminary injunction and that with regard to Alpert's arguments regarding standing, Cal-Western was appointed as successor trustee in June 18, 2010. To that end, Cal-Western requested that the court take judicial notice of an appointment of successor trustee in which Aurora had appointed Cal-Western as trustee effective June 18, 2010. The appointment was recorded on August 10, 2010.

On November 17, 2010, the trial court entered an order granting a permanent injunction against the foreclosure sale. The court also ordered Alpert to file an amended complaint within 90 days, "naming all possible parties in interest." On February 14, 2011, Alpert filed another amended complaint naming Cal-Western, Aurora, U.S. Bank, Residential Funding Company,[1] MERS, MERS as nominee for Homecomings, Chicago Title, Chase Home Finance LLC (Chase), and Homecomings as defendants (2011 complaint). Also named as a defendant was Alice Alpert,[2] Alpert's ex-wife, who, according to Alpert, held a valid lien on the Property. In his 2011 complaint, Alpert incorporated by reference the allegations and requests for relief in his first amended complaint. He also requested "[a]n equitable decree quieting title in the subject property in

---

[1] Although "Residential Funding Corporation" was the indorsee on the second copy of the Note that Alpert received, the entity named in this lawsuit was "Residential Funding Company." This discrepancy does not affect any of the issues in this appeal, and we refer to Residential Funding Corporation or Residential Funding Company as the context requires.

[2] Because Alice and Spencer Alpert share a last name, we refer to Alice Alpert by her first name for clarity.

[Alpert], subject to the valid lien of Alice L. Alpert." Additionally, Alpert requested an "equitable decree voiding any liens on the subject property held by, for or through defendants Cal-Western, Aurora, U.S. Bank . . . , Residential Funding, MERS, MERS as nominee for Homecomings, Chicago Title, Chase and Homecomings."

On June 15, 2011, Cal-Western moved for summary judgment. It argued that it should be dismissed because it was already subject to the permanent injunction entered in November 2010, it claimed no interest in the Property except as having been named successor trustee, and it complied with all applicable statutes.

Around the same time, Homecomings and Residential Funding Company filed a motion to dismiss. Although that motion is not in the record, a declaration from Michael Bennett in support of the motion was made a part of the record. Bennett, an employee of GMAC Mortgage LLC, declared that on August 30, 2006, Homecomings "transferred, assigned or sold any and all interest it had in the loan secured by [Alpert]'s property." As evidence of this transfer, Bennett attached what appears to be the same copy of the Note that was filed with the notice of trustee's sale, i.e., the copy with a blank indorsement from Homecomings. Bennett's declaration did not identify the entity to which the loan was transferred, assigned, or sold.

Bennett also declared that "[i]n November 2006, Residential Funding Company transferred, assigned or sold any and all interest it had in the loan secured by [the P]roperty." As evidence of this sale, Bennett cited an allonge

7

attached to his declaration. The allonge references the Note by its date, loan amount, Alpert's name, and the Property's address. The allonge contains a blank indorsement by Residential Funding Corporation. Bennett declared that "Residential Funding Company is not involved in the foreclosure of [Alpert]'s property and no longer has, nor does it claim, any interest in [Alpert]'s property."

Finally, Bennett declared that at one point in time, Homecomings was the servicer of Alpert's loan, but in April 2008, Homecomings sold the servicing of Alpert's loan to Aurora.

On June 20, 2011, the trial court dismissed Alpert's claims against Homecomings and Residential Funding Company. Later, the trial court also dismissed Alpert's claims against Chicago Title and Chase. These dismissals are not at issue in this appeal.

Meanwhile, on July 19, 2011, while Cal-Western's summary judgment motion was still pending, Aurora and MERS moved to dismiss Alpert's 2011 complaint for failure to state a claim. They argued that because there were no competing claims of ownership or right to possession between Alpert, Aurora, and MERS, Alpert had failed to state a claim for quiet title. They also asserted that in May 2010, MERS assigned the deed of trust to Aurora and cited to a corporate assignment of deed of trust attached as an exhibit to their motion. They argued, relying on the same allonge that was attached to Bennett's declaration, that the Note was indorsed in blank and that as the holder of the Note, Aurora was "entitled to enforce all of the contractual rights referenced in the Note, such as collecting payments, and initiating foreclosure upon borrower's

8

default." They further argued that Alpert was not entitled to declaratory relief and that because they had demonstrated Aurora's "current and prior authority to enforce the Note," the trial court should dissolve the injunction entered in November 2010.

On August 26, 2011, the trial court entered an order dismissing Alpert's claims against Aurora and MERS with prejudice. That order did not dissolve the injunction. The same day, the court also entered an order granting Cal-Western's motion for summary judgment and dismissing Cal-Western. In that order, the court stated that among the documents it considered in connection with Cal-Western's motion was the "[o]riginal Note produced in Court by Defendant Aurora."

Entry of the orders dismissing Alpert's claims against Aurora, MERS, and Cal-Western left U.S. Bank and Alice as the only remaining defendants. On November 7, 2011, U.S. Bank filed a motion for judgment on the pleadings and dissolution of the November 2010 injunction. In its motion, U.S. Bank argued that because there was no competing claim of ownership or right to possession between Alpert and U.S. Bank, Alpert had failed to state a claim for quiet title. U.S. Bank also argued that Alpert was not entitled to declaratory relief because Aurora had already demonstrated, by presenting the original Note to the court, that it was entitled to foreclose. Additionally, U.S. Bank contended that there was no remaining basis for the injunction because as the beneficiary in possession of the Note, Aurora was authorized to foreclose if Alpert defaulted, and Alpert did not deny that he had defaulted.

On December 16, 2011, the trial court granted U.S. Bank's motion and dismissed Alpert's claims against U.S. Bank, leaving Alice as the sole remaining defendant. The court also dissolved the November 2010 injunction and scheduled a foreclosure sale for February 17, 2012.

On January 10, 2012, Alpert filed a notice of appeal to this court. In his notice of appeal, Alpert designated (1) the August 26, 2011, order dismissing Alpert's claims against Aurora and MERS, (2) the August 26, 2011, order granting Cal-Western's motion for summary judgment, and (3) the December 16, 2011, order granting U.S. Bank's motion for judgment on the pleadings and dissolution of the injunction. On April 16, 2012, the following notation ruling was entered "regarding appellant's failure to file amended notice of appeal from a final judgment or file CR 54(b) findings signed by the trial court by April 9, 2012: Review is dismissed as premature." A certificate of finality was entered on May 25, 2012.

Almost seven years later, on March, 21, 2019, the trial court entered a stipulated order dismissing Alice without prejudice (March 2019 stipulated order).[3] The order states that it "shall serve as the final judgment concluding all

---

[3] The record does not reflect what, if anything, occurred in this case after this court dismissed Alpert's 2012 appeal and before the trial court entered the March 2019 stipulated order. U.S. Bank and MERS represent that during that time, Alpert filed additional actions that have forestalled foreclosure attempts and request that we take judicial notice of those actions. Because U.S. Bank and MERS do not brief the requirements of RAP 9.11, we decline to do so. See King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 142 Wn.2d 543, 549 n.6, 14 P.3d 133 (2000) ("Even though ER 201 states that certain facts may be judicially noticed at any stage of a proceeding, RAP 9.11 restricts appellate consideration of additional evidence on review.").

proceedings in this case." Alpert now appeals. In addition to the March 2019 stipulated order, Alpert again designates the August 26, 2011, order dismissing his claims against Aurora and MERS, as well as the December 16, 2011, order granting U.S. Bank's motion for judgment on the pleadings and dissolution of the injunction (the 2011 orders).

ANALYSIS

*Appealability of 2011 Orders*

As an initial matter, we must decide which of the orders designated in Alpert's notice of appeal are properly before this court. U.S. Bank and MERS[4] contend that because Alpert stipulated to the order dismissing Alice, he does not have standing to appeal that order. They also contend that Alpert's appeal of the 2011 orders is untimely because it was not filed within 30 days after entry of those orders.

Because Alpert stipulated to the March 2019 stipulated order and thus was not aggrieved by that order, he cannot—and does not—seek review of that order. See RAP 3.1 ("Only an aggrieved party may seek review by the appellate court."); Fite v. Lee, 11 Wn. App. 21, 25-26, 521 P.2d 964 (1974) ("The order of dismissal . . . was in the nature of a judgment by consent, which, in the absence of fraud or mistake or want of jurisdiction, will not be reviewed on appeal.").

Nevertheless, the March 2019 stipulated order had the effect of a final judgment that made the 2011 orders appealable. Specifically, under CR 54(b), when there are multiple parties involved in a case, the trial court may direct entry

---

[4] Neither Aurora nor Alice filed a respondent's brief.

of final judgment as to fewer than all of the parties, but "only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment" (CR 54(b) certification). And under RAP 2.2(d), "an appeal may be taken from a final judgment that does not dispose of all the claims . . . as to all the parties" *only* if a CR 54(b) certification has been made. In the absence of a CR 54(b) certification, an order dismissing fewer than all of the parties to a case "is subject only to discretionary review until the entry of a final judgment adjudicating all the claims, counts, rights, and liabilities of all the parties." RAP 2.2(d).

Here, there were multiple parties involved in the case. And the 2011 orders dismissed fewer than all of the parties because after they were entered, Alice remained a defendant in the case. Furthermore, the trial court did not make a CR 54(b) certification with regard to either of the 2011 orders. Therefore, as confirmed by this court's 2012 dismissal of Alpert's first appeal as premature, the 2011 orders were not appealable until entry of a final judgment adjudicating the liabilities of all of the parties.

To that end, the March 2019 stipulated order states that "[t]his order shall serve as a final judgment concluding all proceedings in this case." In other words, the effect of the order was to discontinue litigation in this case. Therefore, we conclude that the March 2019 stipulated order had the effect of a final judgment with regard to the appealability of the 2011 orders. And because Alpert filed his notice of appeal within 30 days after entry of the March 2019 stipulated order, his appeal of the 2011 orders is timely. See Fox v. Sunmaster Prods.,

Inc., 115 Wn.2d 498, 502, 798 P.2d 808 (1990) (order dismissing one of multiple defendants without a proper CR 54(b) certification "was not . . . appealable until the remaining claims were dismissed," and thus, appeal was timely where plaintiff filed notice of appeal some months later but within 30 days after trial court dismissed the remaining claims).

U.S. Bank and MERS point out that under RAP 5.2(a), and subject to enumerated exceptions in that rule that do not apply here, "a notice of appeal must be filed in the trial court within . . . 30 days." They then argue that because Alpert did not appeal the 2011 orders within 30 days after each was entered, his appeal of those orders "is beyond this Court's jurisdiction." But the 30-day clock for filing a notice of appeal under RAP 5.2(a) did not begin running with regard to the 2011 orders until the trial court entered the 2019 stipulated order resolving all remaining claims. See Fox, 115 Wn.2d at 502; see also Harley H. Hoppe & Assocs., Inc. v. King County, 162 Wn. App. 40, 50, 255 P.3d 819 (2011) (holding that stipulated order dismissing defendant's counterclaim triggered the 30-day clock to appeal an earlier order granting the defendant's motion for summary judgment). Therefore, U.S. Bank and MERS' argument fails.

U.S. Bank and MERS next contend that "[c]learly, Alpert obtained the [March 2019 stipulated order] so he could use it . . . to 'appeal' the 2011 Orders he failed to timely appeal . . . [, and s]uch gamesmanship should not be countenanced." But as discussed, under RAP 2.2(d) and CR 54(b), the 2011 orders were not appealable when they were entered. Cf. Norquest/RCA-W Bitter Lake P'ship v. City of Seattle, 72 Wn. App. 467, 472-75, 865 P.2d 18 (1994)

13

(absent CR 54(b) certification, 1989 order addressing only liability and not damages was not final and appealable until after damages were adjudicated two years later). Furthermore, despite having received notice of this court's 2012 ruling, which expressly referenced CR 54(b) and stated that Alpert's appeal was being dismissed as *premature*, U.S. Bank and MERS do not cite—much less discuss—RAP 2.2(d) and CR 54(b) in their brief. Instead, they rely solely on RAP 5.2(a) and cases applying it to support their contention that Alpert's appeal is untimely. Consequently, they have pointed us to no authority that persuades us that Alpert's appeal of the 2011 orders is untimely or that Alpert engaged in gamesmanship not permitted by CR 54(b) and RAP 2.2(d).[5] We thus reach the

---

[5] The March 2019 stipulated order dismissed Alpert's claims against Alice without prejudice. We acknowledge that although an order of dismissal without prejudice may have the effect of *preventing* a final judgment, it is not *itself* a final judgment. See Munden v. Hazelrigg, 105 Wn.2d 39, 44, 711 P.2d 295 (1985) ("Where a dismissal without prejudice has the effect of determining the action and preventing a final judgment or discontinuing the action, the dismissal is appealable" under RAP 2.2(a)(3).). Nevertheless, U.S. Bank and MERS, who rely solely on RAP 5.2(a) and do not address CR 54(b) or RAP 2.2(d), point us to no authority supporting the proposition that a dismissal without prejudice of claims against the sole remaining defendant cannot have the effect of a final judgment with regard to earlier orders dismissing claims against other defendants.

Furthermore, we find persuasive the reasoning employed by the Eighth Circuit Court of Appeals in State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102 (8th Cir. 1999). In Nixon, the State of Missouri sued two defendants, the Coeur D'Alene Tribe and its contractor, UniStar Entertainment Inc. for conducting internet gambling. Nixon, 164 F.3d at 1104. The trial court dismissed all of Missouri's claims against the Tribe as barred by tribal immunity, and there was no certification of that dismissal for immediate appeal under the federal version of CR 54(b). Nixon, 164 F.3d at 1105. Later, Missouri voluntarily dismissed its claims against UniStar without prejudice and then appealed the court's earlier order dismissing the Tribe. Nixon, 164 F.3d 1105. The Tribe argued on appeal that "a voluntary dismissal without prejudice of a remaining defendant . . . does not render a previous order finally dismissing other defendants immediately appealable." Nixon, 164 F.3d 1105. The Eighth Circuit disagreed, observing that

14

merits of the 2011 orders.

*Standard of Review*

Alpert contends that the trial court erred by dismissing his claims against Aurora, MERS, and U.S. Bank.[6] Alpert's claims against Aurora and MERS were dismissed pursuant to CR 12(b)(6), and his claims against U.S. Bank were dismissed pursuant to CR 12(c). Under either rule, "[a] court may dismiss a complaint . . . only if 'it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery.'" Didlake v. State, 186 Wn. App. 417, 422, 345 P.3d 43 (2015) (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998)). "The court must assume the truth of facts alleged in the complaint, as well as hypothetical facts, viewing both in the light most favorable to the nonmoving party." Didlake, 186 Wn. App. at 422. But "[i]f the trial court considered matters outside the pleadings, the reviewing court treats a CR 12 motion as a motion for summary judgment under CR 56(c)." Didlake, 186 Wn. App. at 422.

---

"the Tribe offers no suggestion as to when the order dismissing it *would be* appealable. In other words, the Tribe seeks the windfall of complete freedom from appellate review because [Missouri] failed to dismiss UniStar with prejudice. A less equitable position is hard to imagine." Nixon, 164 F.3d at 1105-06. Here, as in Nixon, if we declined to treat the March 2019 stipulated order as a final judgment rendering the 2011 orders appealable, it would be unclear when those orders *would be* appealable, and U.S. Bank and MERS would receive "the windfall of complete freedom from appellate review." Nixon, 164 F.3d at 1106. We will not sanction that result.

[6] Alpert does not assign error to, or provide authority or argument with regard to, the trial court's decision to dissolve the permanent injunction. Accordingly, we do not review that decision. We note, however, that when the trial court initially granted the injunction, it did not order Alpert to make monthly payments as required by RCW 61.24.130(1)(a). We direct the trial court's attention to that statute should Alpert seek another injunction on remand.

15

Here, the trial court considered matters outside the pleadings when considering both Aurora and MERS' CR 12(b)(6) motion and U.S. Bank's CR 12(c) motion. Specifically, according to its order granting Aurora and MERS' motion, the court considered "the *files and* pleadings herein." (Emphasis added.) Additionally, the court specifically listed, among the files it considered, the exhibits attached to Aurora and MERS' motion. These exhibits included the allonge to the Note, the assignment of the deed of trust by which MERS assigned the deed to Aurora, and the appointment of successor trustee by which Aurora appointed Cal-Western as trustee. These documents were not referenced in Alpert's complaint.

Similarly, with regard to U.S. Bank's motion, the court, according to its own order, considered "the *files and* pleadings herein." (Emphasis added.) And the court specifically listed, among the files it considered, "Plaintiff's Response *and additional documents filed by Plaintiff*," a clear reference to a declaration that Alpert filed with his response to U.S. Bank's motion. (Emphasis added.) For these reasons, we treat Alpert's appeal from the CR 12(b)(6) and CR 12(c) dismissals of his claims as an appeal from summary judgment orders.

We review summary judgment orders de novo, and "[w]e may affirm on any basis supported by the record." Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR

56(c)).

Here, Alpert's claims against each of the defendants consisted of a claim for quiet title, an "equitable decree voiding any liens on the subject property," and declaratory relief as to the defendants' standing to foreclose. As further discussed below, we conclude that the trial court did not err by dismissing Alpert's claims for quiet title and equitable voiding of liens with regard to Aurora, U.S. Bank, and MERS. The trial court also did not err by dismissing Alpert's claim for declaratory relief with regard to U.S. Bank and MERS. But because a genuine issue of material fact remains as to whether Aurora is the holder of the Note, we conclude that the trial court erred by dismissing Alpert's claim for declaratory relief with regard to Aurora.

*Quiet Title*

Quiet title actions are designed to resolve competing claims of ownership or the right to possess property. Kobza v. Tripp, 105 Wn. App. 90, 95, 18 P.3d 621 (2001). But here, MERS, which assigned the deed of trust to Aurora, and U.S. Bank, which never contended that it had an interest in the Property, did not assert competing claims of ownership to the Property or a right to possess it. And although Aurora asserted that it was the beneficiary of the deed of trust, Alpert has cited no authority that such an interest alone is sufficient to sustain a quiet title claim. Cf. RCW 7.28.230(1) (providing that mortgage of interest in real property is not deemed a conveyance as to enable the owner of the mortgage to recover possession without a foreclosure sale); RCW 7.28.300 ("The record owner of real estate may maintain an action to quiet title against the lien of a . . .

deed of trust . . . *where an action to foreclose such . . . deed of trust would be barred by the statute of limitations.*" (emphasis added)).  For these reasons, the trial court did not err by dismissing Alpert's claim for quiet title with regard to Aurora, MERS, and U.S. Bank.

*Equitable Voiding of Liens*

Alpert asserted in his 2011 complaint that he was entitled to "[a]n equitable decree voiding any liens on the subject property" held by Aurora, MERS, and U.S. Bank.  But he provides no argument or authority to support the proposition that he is entitled to a remedy consisting of lien avoidance—or even that there exists a genuine issue of material fact in this regard.  Therefore, we conclude that the trial court did not err by dismissing Alpert's claim for an equitable decree voiding any liens held by Aurora, MERS, and U.S. Bank.

*Declaratory Relief*

Alpert contends that the trial court erred by dismissing his claim for declaratory relief with regard to the defendants' standing to foreclose.  As further discussed below, there remains a genuine issue of material fact as to whether Aurora was the holder of the Note.  Therefore, the trial court erred by dismissing Alpert's claim for declaratory relief with regard to Aurora.  The trial court did not err, however, by dismissing Alpert's claim for declaratory relief with regard to U.S. Bank and MERS.

Under Washington's deed of trust act (DTA), chapter 61.24 RCW, only a lawful beneficiary may appoint a trustee to proceed with a nonjudicial foreclosure of real property.  Villegas v. Nationstar Mortg., LLC, 8 Wn. App. 2d 878, 889, 444

18

P.3d 14, <u>review</u> <u>denied</u>, 194 Wn.2d 1006 (2019). A "beneficiary" means "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). The "holder" of a promissory note is, as relevant here, "[t]he person in possession of a [note] that is payable . . . to bearer." RCW 62A.1-201(b)(21)(A); <u>see</u> <u>also</u> <u>Bain v. Metro. Mortg. Grp., Inc.</u>, 175 Wn.2d 83, 104, 285 P.3d 34 (2012) (referring to Uniform Commercial Code (UCC) to interpret the term "holder" as used in DTA). A note becomes payable to bearer when it is indorsed in blank. RCW 62A.3-205(b). An "indorsement" is "a signature . . . made on an instrument for the purpose of . . . negotiating the instrument[ or] . . . restricting payment of the instrument." RCW 62A.3-204(a). An indorsement is made in blank when it does not identify a person to whom it makes the note payable. RCW 62A.3-205(a)-(b). An indorsement that *does* identify a person to whom it makes the note payable is a "special indorsement." RCW 62A.3-205(a). When a note is specially indorsed, it "becomes payable to the identified person and may be negotiated only by the indorsement of that person." RCW 62A.3-205(a). By contrast, "[w]hen indorsed in blank, a[ note] . . . may be negotiated by transfer of possession alone until specially indorsed." RCW 62A.3-205(b).

Here, Aurora asserted below that it was the holder of the Note because (1) it was in possession of the Note and (2) the Note was indorsed in blank. Specifically, Aurora asserted that the Note was negotiated as follows: "[T]he subject Note was first made payable to Homecomings . . . . The Note was then endorsed payable to Residential Funding Corporation. Subsequently Residential

19

Funding Corporation executed an Allonge, endorsing the Note in blank."

(Citations omitted.) In other words, Aurora relied on the allonge to contend that the Note was indorsed in blank.

But as Alpert correctly points out, to constitute a valid indorsement, an allonge must be "affixed" to the note. See RCW 62A.3-204(a) ("'Indorsement' means a signature . . . made *on an instrument* . . . . For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." (emphasis added)). The UCC does not define "affix," but the dictionary definition of "affix" is "to attach physically (as by nails or glue)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 36 (2002); see also Nissen v. Pierce County, 183 Wn.2d 863, 881, 357 P.3d 45 (2015) (court may use dictionary to discern plain meaning of undefined statutory terms).[7] Here, Aurora presented no evidence—not even a declaration—to establish that the allonge was physically attached to the Note.[8] Furthermore, the evidence in the record, when viewed in the light most favorable to Alpert, indicates otherwise:

---

[7] There appear to be no reported Washington cases interpreting the term "affix" as used in RCW 62A.3-204(a). However, we observed in an unpublished decision that "[a] separate paper, or one pinned or clipped to the [instrument], will not suffice." Fierro v. BSI Fin. Servs., No. 73016-9-I, slip op. at 7 (Wash. Ct. App. Nov. 16, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/730169.pdf (citing 7 WARREN L. SHATTUCK & RICHARD COSWAY, WASHINGTON PRACTICE, UNIFORM COMMERCIAL CODE FORMS § 3-205 form 2, at 702 (Supp. 2019)).
  Because the parties do not adequately brief the issue and because its resolution is not necessary to resolve this appeal, we express no opinion as to the degree of physical attachment required to satisfy the affixation requirement set forth in RCW 62A.3-204(a).

[8] Aurora pointed out below that the allonge itself states, "'For purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said Note.'" But this statement does not establish that the allonge was in fact physically attached to the Note.

For example, Alpert declared that the first time he became aware of the allonge was when it was produced in litigation and that it was not included with either version of the Note previously supplied to him by Cal-Western and Aurora. Therefore, a genuine issue of material fact remains as to whether the allonge constitutes a valid indorsement. If it does, then the Note is indorsed in blank and Aurora can establish its standing to foreclose solely based on its possession of the Note. But if it does not, the Note remains indorsed to Residential Funding Corporation and Aurora's mere possession of the Note does not establish its standing to foreclose. For these reasons, a genuine issue of material fact remains as to whether Aurora has standing to foreclose.

U.S. Bank and MERS disagree and contend that the trial court correctly determined that Aurora demonstrated standing. In support of their contention, they point out that Aurora presented the original Note to the trial court, as memorialized by the trial court's notation on its order granting Cal-Western's motion for summary judgment. But that notation does not indicate whether the trial court also considered the allonge—much less resolve the issue of whether the allonge was affixed to the Note. Therefore, U.S. Bank and MERS' contention fails. And because U.S. Bank and MERS do not present any theory other than Aurora's possession of the Note to support Aurora's standing, we conclude that the trial court erred by dismissing Alpert's declaratory relief claim against Aurora.

We turn next to the trial court's dismissal of Alpert's declaratory relief claims against MERS and U.S. Bank. "In order to decide an action for declaratory relief, a justiciable controversy must be present." Benton County v.

21

Zink, 191 Wn. App. 269, 277, 361 P.3d 801 (2015).  A justiciable controversy

requires

> "(1) . . . an actual, present and existing dispute, or the mature
> seeds of one, as distinguished from a possible, dormant,
> hypothetical, speculative, or moot disagreement, (2) between
> parties having genuine and opposing interests, (3) which involves
> interests that must be direct and substantial, rather than potential,
> theoretical, abstract or academic, and (4) a judicial determination of
> which will be final and conclusive."

To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)

(alteration in original) (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wn.2d

811, 815, 514 P.2d 137 (1973)).

Here, neither MERS nor U.S. Bank asserted any standing to foreclose.

Accordingly, there was no justiciable controversy supporting a claim for

declaratory relief, and thus, the trial court did not err by dismissing Alpert's

declaratory relief claim against MERS and U.S. Bank.

Alpert contends that dismissal of U.S. Bank was inappropriate for two

reasons: first, because "it relies on the proposition that the Aurora ruling is

correct" and second, because "the court . . . failed to consider the ever-shifting

representations made by [U.S. Bank], and on its behalf by Aurora, its appointed

representative, identifying it first as 'owner' of [the Note] . . . , and subsequently

eschewing any claim of ownership whatsoever."  But as discussed, because U.S.

Bank did not assert any standing to foreclose, there was no justiciable

controversy supporting declaratory relief as to U.S. Bank, regardless of the trial

court's ruling as to Aurora.  For the same reason, U.S. Bank's allegedly "ever-

shifting representations" regarding ownership of the Note are irrelevant.  Cf.

22

Villegas, 8 Wn. App. 2d at 890 ("The holder of the note is not necessarily the owner, and a holder does not need to own a note to enforce the note.").

Alpert also argues that dismissal of U.S. Bank was inappropriate because CR 12(c) motions are made after the pleadings are closed, but Alice had not yet filed an answer when U.S. Bank filed its CR 12(c) motion to dismiss. But U.S. Bank had filed *its* answer, and Alpert cites no authority for the proposition that a CR 12(c) motion cannot be entertained until *all* defendants have answered. Therefore, Alpert's argument is unpersuasive.

As a final matter, Alpert argues, as an alternate basis for reversal, that he presented evidence of fraud on the part of the defendants. Specifically, he points out that although the copy of the Note filed with the notice of trustee's sale was indorsed in blank, the copy he later received from Aurora was indorsed to Residential Funding Corporation. He asserts that the Note was initially indorsed to Residential Funding Corporation and that Aurora later "whited out" the text "Residential Funding Corporation" to make it appear that the Note was indorsed in blank. To support this assertion, Alpert points to a declaration in which he stated, "I held both copies of the signature page of the two notes up to the light, and it looked like the name 'Residential Funding Corporation' had been whited out on the first version. That is because the residue of previous writing is clearly evident on the first version."

But according to the Bennett declaration, Homecomings transferred the Note on August 30, 2006, just two days after the date of the Note. As evidence of this transfer, Bennett attached a copy of the Note with a blank indorsement by

Homecomings. The existence of another copy of the Note showing a stamped indorsement to Residential Funding Corporation and the existence of the allonge (whether valid or not) merely indicate that Residential Funding Corporation later negotiated the Note. See RCW 62A.3-205(c) ("The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable."). Alpert's assertion that Aurora "whited out" the Residential Funding Corporation stamp is entirely speculative. So, too, is his assertion about the "residue of previous writing," particularly where Alpert was not inspecting the original Note, but merely comparing copies thereof. These assertions do not create a genuine issue of material fact and thus do not support reversal. See Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986) (Speculation and "argumentative assertions that unresolved factual issues remain" are insufficient to create a genuine issue of material fact.).

*Fees on Appeal*

U.S. Bank and MERS contend that they are entitled to attorney fees under RAP 18.9 because Alpert's appeal is frivolous. But their argument regarding the frivolity of Alpert's appeal rests almost entirely on their assertion that Alpert's appeal is untimely. That assertion is not, as evidenced by our discussion above, devoid of merit. Therefore, we deny the request for fees on appeal. Cf. Streater v. White, 26 Wn. App. 430, 434, 613 P.2d 187 (1980) (appeal is frivolous where it "presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal").

24

We reverse the trial court's dismissal of Alpert's declaratory relief claim as to Aurora's standing to foreclose and remand for further proceedings with regard to that claim. Otherwise, we affirm.

WE CONCUR:

Andrus, A.C.J.